UNITED STATES of America, Plaintiff-Appellee,

v.

Glenn G. GOETZ, a/k/a "Glenn G. Getz" Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

James Calvin PERKINS, Defendant-Appellant.

Nos. 83–8667, 83–8668.

United States Court of Appeals, Eleventh Circuit.

Nov. 12, 1984.

W. Louis Sands, Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee in both cases.

Joe D. Whitley, U.S. Atty., Macon, Ga., for plaintiff-appellee in No. 83–8668.

Kenneth W. Musgrove, Albany, Ga., Jeffrey L. Shrom, Missoula, Mont., for defendants-appellants in both cases.

Before KRAVITCH and HENDERSON, Circuit Judges, and ALLGOOD,* District Judge.

KRAVITCH, Circuit Judge:

Defendants Glenn G. Goetz, a/k/a "Getz," and James Calvin Perkins[1] were each convicted of two counts of willful failure to file federal income tax returns in violation of 26 U.S.C. § 7203.[2] In this appeal, defendants challenge the validity of their convictions based upon two pretrial determinations made by the court below. Because we believe that both of these rulings invaded the province of the jury and thus unconstitutionally denied defendants the right to a trial by jury, we reverse and remand these cases for new trials.

I. BACKGROUND

 For the years 1977 and 1978, Goetz and Perkins submitted to the Internal Revenue Service (IRS) tax forms which contained only the words "object self incrimination" in each space requesting income information. Attached to these forms were several pages of typed information discussing the fifth amendment. No information regarding Goetz's or Perkins's income was included. Both defendants were indicted on two counts of violating 26 U.S.C. § 7203 (Willful failure to file a return). In order to prove a violation of this statute, the government must prove the following three elements: the taxpayer was required to file an income tax return; the taxpayer failed to file such return; and the taxpayer's violation was willful.

In response to a series of pretrial motions, the lower court issued an order which stated that, as a matter of law, the documents submitted by the defendant were not tax returns within the meaning of section 7203. The pretrial order went on to rule that unless the defendants made a prima facie showing to the court in camera of the validity of their good faith defense, they would not be able to present this defense to the jury. The defendants claimed that requiring such an in camera showing on the issue of good faith was illegal and refused to take part in such a hearing. The juries at both trials were explicitly instructed that the documents submitted by the defendants were not tax returns and defendants were not permitted to produce any evidence of good faith.

Both Goetz and Perkins were convicted of two counts of violating section 7203, sentenced to two years imprisonment, and fined $20,000.

II. LOWER COURT'S DETERMINATION THAT DEFENDANTS DID NOT FILE A RETURN.

 The trial court correctly ruled that, as a matter of law, alleged tax returns which do not contain any financial information are not "returns" within the meaning of section 7203. *See, e.g., United States v. Pilcher,* 672 F.2d 875, 877 (11th Cir.), *cert. denied,* 459 U.S. 973, 103 S.Ct. 306, 74 L.Ed.2d 286 (1982); *United States v. Booher,* 641 F.2d 218, 219 (5th Cir. Unit B 1981);[3] *United States v. Smith,* 618 F.2d 280, 281 (5th Cir.), *cert. denied,* 449 U.S. 868, 101 S.Ct. 203, 66 L.Ed.2d 87 (1980);[4] *United States v. Johnson,* 577 F.2d 1304, 1311 (5th Cir.1978); *United States v. Daly,*

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Although Goetz and Perkins were tried separately, we have consolidated their appeals. We do so because they were both convicted of violating 26 U.S.C. § 7203, they claimed the fifth amendment privilege in an identical manner, and they complain of the same errors on appeal.

2. 26 U.S.C. § 7203 provides in pertinent part:
 Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return ... who willfully fails to ... make such return, at the time or times required by law or regulations, shall, in addition to other penalties provides by law, be guilty of a misdemeanor ....

3. Decisions of Unit B of the former Fifth Circuit are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

4. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

481 F.2d 28, 29 (8th Cir.1973); *United States v. Porth,* 426 F.2d 519, 522–23 (10th Cir.) *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970).[5] The court, however, went on to determine that the documents filed by the defendants did not contain any financial information, and concluded that, as a matter of law, these documents were not returns. In doing so, the lower court applied the facts to the law, thus invading the province of the jury. In essence, the court directed a verdict as to one of the three elements of the alleged offense: failure to file a return.

■ The rule is firmly established that the trial judge cannot direct a verdict in favor of the government for all or even one element of a crime. The former Fifth Circuit emphatically stated this principle:

> [N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truth. In our federal system, the Trial Court may never instruct a verdict either in whole or in part.

*Roe v. United States,* 287 F.2d 435, 440 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961); *see also United Brotherhood of Carpenters and Joiners of America v. United States,* 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973 (1946); *United States v. Sheldon,* 544 F.2d 213, 221 (5th Cir.1976); *United States v. Bosch,* 505 F.2d 78, 82 (5th Cir.1974); *United States v. Musgrave,* 444 F.2d 755, 762 (5th Cir.1971), *cert. denied,* 414 U.S. 1023, 93 S.Ct. 447, 38 L.Ed.2d 315 (1973); *United States v. England,* 347 F.2d 425 (7th Cir. 1965); *United States v. McKenzie,* 301 F.2d 880 (6th Cir.1962); *Brooks v. United States,* 240 F.2d 905 (5th Cir.1957); *Schwachter v. United States,* 237 F.2d 640 (6th Cir.1956); *United States v. Manuszak,* 234 F.2d 421 (3d Cir.1956); *Carothers v. United States,* 161 F.2d 718 (5th Cir.1947). The rationale behind this rule is respect for, and adherence to, the jury system.

The Supreme Court in *United States v. Martin Linen Supply Company,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) spoke of the importance of the jury in a criminal trial:

> [The jury's] overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing a jury to come forward with such a verdict, see *Sparf & Hansen v. United States,* 156 U.S. 51 [15 S.Ct. 273, 39 L.Ed. 343] (1895); *Carpenters v. United States,* 330 U.S. 395, 408 [67 S.Ct. 775, 782, 91 L.Ed. 973] (1947), regardless of how overwhelmingly the evidence may point in that direction.

*Id.* at 572–73, 97 S.Ct. at 1355–56. There is no reason to deny the defendant the right to a jury determination when the evidence seems overwhelmingly in favor of the government. As stated in *Konda v. United States,* 166 F. 91, (7th Cir.1908):

> Our conclusion is that an accused person has the same right to have 12 laymen pronounce upon the truth or falsity of each material averment in the indictment, if the evidence against him is clear and uncontradicted, as he unquestionably would have if it were doubtful and conflicting. Inasmuch as jurors are rightly trusted, in close and difficult cases, to maintain the peace and dignity of organized society, surely they may be relied upon in the plain and simple ones.

*Id.* at 93.

The Seventh Circuit dealt with a case similar to the one at bar in *United States v. England,* 347 F.2d 425. In *England,* the defendant was charged with willfully attempting to defeat the payment of income taxes. To convict a defendant of this crime, the government must prove that it has a valid assessment of tax owed. The

---

**5.** None of these cases, however, addresses a sixth amendment claim challenging a jury charge. Rather, they state the proposition as background (*Pilcher,* 672 F.2d 875; *Booher,* 641 F.2d 218), as part of a fifth amendment analysis (*Johnson,* 577 F.2d 1304), as bearing on the question of whether the defendant was properly charged (*Smith,* 618 F.2d 280) or as dispositive of a sufficiency-of-the-evidence claim (*Daly,* 481 F.2d 28; *Porth,* 426 F.2d 519).

district judge instructed the jury that "as a matter of law" the assessments made against the defendant were valid. *Id.* at 429. In reversing, the appellate court ruled that "the defendant has an absolute right to a jury determination on all essential elements of the offense." *Id.* at 430. The court then went on to provide ample citation of cases in which the appellate court reversed a trial court's attempt to apply the facts to the law. *E.g., United States v. McKenzie,* 301 F.2d 880 (prosecution for the possession of non-taxed whiskey and trial judge found that the fact of possession existed); *Brooks v. United States,* 240 F.2d 905 (trial court ruled as a matter of law that the Internal Revenue Service agent who administered the oath had authority to do so); *Schwachter v. United States,* 237 F.2d 640 (in case involving the sale of an automobile moving in interstate commerce, trial judge ruled that the automobile in question was in interstate commerce); *United States v. Manuszak,* 234 F.2d 421 (in trial for theft of interstate goods, trial judge ruled that a theft had occurred); *Carothers v. United States,* 161 F.2d 718 (defendant was charged with violations of the Emergency Price Control Act and trial judge determined that the maximum ceiling price was established as a matter of law at a price less than defendant was charged with receiving).

The *England* court acknowledged a contradictory line of cases, albeit a shorter one. We, too, acknowledge these cases, but do not find them persuasive. Some are distinguishable from the one at bar because they involved judges who commented upon the evidence, perhaps expressing a strong opinion, but who left the final determination to the jury. *See, e.g., United States v. Jonikas,* 197 F.2d 675 (7th Cir.), *cert. denied,* 344 U.S. 877, 73 S.Ct. 171, 97 L.Ed. 679 (1952). In other cases, the appellate court weighed the evidence and deemed the error harmless. *See, e.g., United States v. Rainone,* 192 F.2d 860 (2d

Cir.1951). This approach has been rejected by the Fifth Circuit, *United States v. Ragsdale,* 438 F.2d 21 (5th Cir.1971); *Mims v. United States,* 375 F.2d 135 (5th Cir.1967); *cf. United States v. Bosch,* 505 F.2d 78 (5th Cir.1974), and we decline to adopt it today. We conclude that a trial court's actions in directing a verdict in a criminal trial, either in whole or in part, cannot be viewed as harmless error.

■ Finally, we turn to *United States v. Grote,* 632 F.2d 387 (5th Cir.1980), *cert. denied,* 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981) in which the Fifth Circuit dealt with the specific situation at bar: jury instructions regarding documents containing no financial information and their viability as returns under section 7203. In *Grote,* the district court instructed the jury that "a taxpayer's return which does not contain financial information enabling the Internal Revenue Service to determine the party's tax liability, if any, is not a return within the meaning of the Internal Revenue Code...." *Id.* at 391. The trial court, however, did not state that the forms in question were not returns. The appellate court recognized that the trial court had not attempted to impermissibly apply the facts to the law and, thus, upheld the challenged instruction. The court observed:

> This language merely instructed the jury, in light of the evidence that had been introduced at trial, how it might find the existence of the second element of the offense charged, and was an accurate statement of the law. The responsibility to find the second element of the offense was clearly the jury's under the charge as given.

*Id.* (citations omitted). The implication of this holding is that the charge was proper precisely because it merely stated the law and left the factfinding to the jury. Unlike *Grote,* in the two cases before this court today, the judge applied the facts to the law, leaving nothing for the jury to determine.[6]

---

**6.** We note that the Seventh Circuit in *United States v. Moore,* 627 F.2d 830 (7th Cir.1980)

reached a result contrary to the one we reached today. In *Moore,* the appellate court upheld the

Our system mandates that to be found guilty of a crime, a defendant must be charged and convicted according to proper legal procedures and standards. *Wilson v. United States*, 250 F.2d 312, 324 (9th Cir. 1958). Defendants in the present case were denied this right.

We conclude that there was reversible error in directing the jury that the documents filed by defendants were not returns.

## III. LOWER COURT'S DETERMINATION THAT DEFENDANTS COULD NOT PRESENT A GOOD FAITH DEFENSE TO THE JURY.

 The fifth amendment does not protect the amount of one's income from disclosure on tax forms. *See e.g., United States v. Pilcher*, 672 F.2d 875, 877 (11th Cir.), *cert. denied*, 459 U.S. 973, 103 S.Ct. 306, 74 L.Ed.2d 286 (1982); *United States v. Johnson*, 577 F.2d 1304, 1310–11 (5th Cir.1978). Nevertheless, a good faith claim of privilege against self-incrimination, although erroneous, is a defense to the element of willfulness which is necessary for a conviction under 26 U.S.C. § 7203. *Garner v. United States*, 424 U.S. 648, 663 n. 18, 96 S.Ct. 1178, 1187 n. 18, 47 L.Ed.2d 370 (1976); *United States v. Murdock*, 290 U.S. 389, 396, 54 S.Ct. 223, 226, 78 L.Ed. 381 (1933); *United States v. Pilcher*, 672 F.2d at 877; *United States v. Booher*, 641 F.2d 218, 219 (5th Cir. Unit B 1981); *United States v. Johnson*, 577 F.2d at 1310–11. In the present case, defendants were precluded from making this good faith showing to the jury by the trial judge's pretrial order which stated:

> While this issue involves a factual dispute normally reserved to the province of the trier of fact, controlling precedent in this area allows a deviation from the usual rule.

In *United States v. Johnson*, 577 F.2d 1304 (5th Cir.1978), the Fifth Circuit held

that where a defendant indicted under § 7203 claims a privilege against self-incrimination as a defense, the claim must first be reviewed by a judicial officer who determines if the information proffered by the defendant would tend to incriminate. *Id.* at 1311. As discussed earlier, the amount of illegal income is not privileged. If the government proves that defendants willfully failed to file a return, and defendants stand mute, then the jury may lawfully find them guilty. A good faith, though erroneous, belief that the *amount* was privileged must be asserted by the defendants. It is in this sense an affirmative defense, a mistake of law. The burden of going forward rests with the defendants. Because of a likelihood of juror confusion, and in order to prevent irrelevant testimony, *Johnson* allows the trial court to make an initial determination of whether defendants had a colorable good faith defense. The defendants, having the burden to go forward, must make a prima facie showing to the court in camera that they had illegal income and that they honestly believed that they were privileged in refusing to reveal the amount of such income. If they fail to make this showing, they will be precluded from presenting the defense to the jury.

Defendants refused to make such an in camera showing and, pursuant to this order, the court disallowed any evidence of good faith at their trials.

 In support of its order for a pre-trial showing of good faith, the district court relied on *United States v. Johnson*, 577 F.2d 1304. The lower court, however, confused the question of whether defendants validly asserted the fifth amendment privilege with the question of whether defendants, when erroneously asserting the privilege, did so in good faith. As a result of this confusion, it appears that the court

---

trial court's instruction that what defendant filed was not a return as a matter of law. The court did not cite any authority for its conclusion that this determination was properly made by the judge, but merely asserted that "[t]he

determination of what is an adequate return is a legal question and it was proper for the district court to decide that question." *Id.* at 834. For the reasons set out in this opinion, we disagree with this holding.

seriously misread *Johnson* to permit a judicial determination of the latter question.

In *Johnson,* the district court instructed the jury:

> The Fifth Amendment privilege does not give a person a right to withhold the required information on the return concerning items the disclosure of which would not incriminate him.
>
> But if the defendant had a good faith belief in his right to assert his privilege not to incriminate himself then the defendant would not be guilty of the crime charged.

577 F.2d at 1310 note 3. The appellant in *Johnson* argued that a good faith blanket claim of fifth amendment privilege completely insulated him from prosecution for failure to file a return, and that the jury should have been so instructed. The Fifth Circuit, in rejecting this reasoning, observed:

> He contends that his privilege against self-incrimination permits him to "stand mute" and refuse to cooperate at all in the determination of his tax liability. He argues that he has a privilege, under the Fifth Amendment, to refuse to disclose *any* income information since he claims that *some* of his income was derived from illegal activities. Therefore, he would have us conclude that the "return" which he supplied in 1970 was proper in its blanket assertion of the Fifth Amendment.... In addition, he argues that he may forever refuse to cooperate with the courts and the IRS in this matter, and his assertion of the privilege cannot ever be tested or questioned.

*Id.* (emphasis in original).

In short, the court was faced with an extremely expansive "interpretation of [a defendant's] rights under the Fifth Amendment in the context of the income tax law." *Id.* In an effort to delineate the limits of the privilege against self-incrimination, the court enumerated:

> Three principles [which] may be distilled from the authorities: (1) the privilege must be claimed specifically in response to particular questions, not merely a blanket refusal to furnish any information; (2) the claim is to be reviewed by a judicial officer who determines whether the information sought would tend to incriminate; (3) the witness or defendant himself is not the final arbitrator of whether or not the information sought would tend to incriminate. *See generally Albertson v. SACB,* 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965); *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed.2d 1118 (1951); *United States v. Sullivan,* [274 U.S. 259 [47 S.Ct. 607, 71 L.Ed. 1037] (1927) ]; *United States v. Oliver* [505 F.2d 301, 306–8 (7th Cir.1974) ]; *Heligman v. United States,* [407 F.2d 448 (8th Cir.), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969) ]. *Cf. California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).

*Id.* at 1311. Noting that the appellant's "defense theory runs afoul of each of these three principles," the court concluded that "[h]e cannot rely on the aegis of the Fifth Amendment privilege against compulsory self-incrimination." *Id.* With reference to the good faith defense, as opposed to the privilege itself, the court observed, "[t]he Fifth Amendment privilege protects the erroneous taxpayer by providing a defense to the prosecution *if the jury finds* that the claim, though erroneous, was made in good faith." *Id.* (emphasis added).

Thus, the court in *Johnson* addressed the contention that the mere assertion of the fifth amendment privilege immunizes a defendant from prosecution without any inquiry into the incriminating nature of the information sought. In response, the court reiterated the well-established principle that "a judicial officer," not the defendant (or even the jury), is to decide whether the information tends to incriminate in determining the validity of the asserted privilege. Indeed, the cases cited by the *Johnson* court relate to this proposition, rather than to when a showing of good faith will be allowed. Nowhere does the court say that once the inapplicability of the asserted privilege has been determined, a judicial

officer, as opposed to a jury, may pass on the question of good faith as it bears on the element of willfulness. The appropriateness of this type of procedure was not before the *Johnson* court.[7]

In the cases before this Court today, the lower court had already determined that the defendants' assertions of the fifth amendment were invalid. No in camera hearing was necessary regarding that point. The only question remaining was whether the errors were made in good faith. The Supreme Court dealt with the jury's role in determining good faith in *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), the case in which the Court first articulated the good faith defense for failure to file an income tax return.[8] The question before the *Murdock* Court was whether the trial court correctly instructed the jury. The judge told the jury that he felt the government had sustained its burden of proving guilt beyond a reasonable doubt and refused to instruct the jury that defendant's good faith should be considered in determining willfulness. The Court held that such instructions constituted reversible error, concluding:

> The trial court could not, therefore, properly tell the jury that the defendant's

assertion of the privilege was so unreasonable and ill founded as to exhibit bad faith and establish willful wrongdoing. This was the effect of the instructions given. We think the Circuit Court of Appeals [in reversing the district court] correctly upheld the respondent's right to have the question of absence of evil motive submitted to the jury . . . .

> The respondent's refusal to answer was intentional and without legal justification, but the jury might nevertheless find that it was not prompted by bad faith or evil intent which the statute makes an element of the offense.

*Id.* at 396–8, 54 S.Ct. at 226.[9] By refusing to allow the defendants to submit any evidence of good faith to the jury, the trial judge in the present case went even further than the trial judge did in *Murdock*. Thus, the actions of the lower court impermissibly invaded the province of the jury.

For the foregoing reasons, these cases are REVERSED and REMANDED.

---

**7.** It is true that *United States v. Booher*, 641 F.2d 218, contains language to the effect that *Johnson* articulated limitations on the defense of good faith, rather than on the actual privilege against self-incrimination. In *Booher*, the court addressed a contention identical to the one presented in *Johnson*, *i.e.*, that a defendant's "claim of the fifth amendment privilege against self-incrimination is an absolute defense to his prosecution under § 7203." *Booher*, 641 at 219. Confronted with this overly expansive view of the fifth amendment privilege, the *Booher* court correctly rejected it on the authority of *Johnson*. However, like *Johnson*, *Booher* concerned a situation, unlike the one at bar, in which the jury had been instructed to consider the good faith defense. Moreover, in the more recent case of *United States v. Vance*, 730 F.2d 736 (11th Cir. 1984), this court clarified the fact that good faith is an issue for jury determination, not a matter to be decided in camera by the judge. *Vance* also concerned a blanket claim of fifth amendment privilege on an IRS form. On appeal, Vance claimed that the district court erred in *refusing* to hold an in camera hearing to determine the validity of his claim of fifth

amendment privilege. The court ruled that "Vance was not entitled to any hearing at all, and he was certainly not entitled to an in camera hearing." *Id.* at 737. The court concluded: "Vance's only defense to the failure to file a return charge was that he had acted pursuant to a good faith claim of privilege, *Booher*, 641 F.2d at 219–21; however, this was an issue for consideration by the jury." *Id.* at 731.

**8.** The *Murdock* case involved predecessor statutes to section 7203, but they were identical to it in all material respects. See Internal Revenue Act of 1926, section 1265, 44 Stat. 850–1; Internal Revenue Act of 1928, section 146(a), 45 Stat. 835.

**9.** *See also* the Fifth Circuit's recent pronouncement on this subject in *United States v. Burton*, 737 F.2d 439 (5th Cir.1984). The district court had charged that defendant's alleged good faith belief that wages were not income was not a defense. The court of appeals reversed, holding that a trial judge cannot keep a claim of good faith from the jury merely because the judge finds such claim objectively unreasonable.