**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                    No. 97-4260

GEORGE LEE NEUJAHR,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
James C. Fox, District Judge.
(CR-96-51-F)

Argued: April 10, 1998

Decided: March 10, 1999

Before MOTZ, Circuit Judge,
STAMP, Chief United States District Judge for the
Northern District of West Virginia, sitting by designation,
and DOUMAR, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Meghan Suzanne Skelton,
Tax Division, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** William Arthur Webb,

Federal Public Defender, Raleigh, North Carolina, for Appellant. Loretta C. Argrett, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Janice McKenzie Cole, United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

George Neujahr appeals from the United States District Court for the Eastern District of North Carolina his January 24, 1997 convictions on four counts of willfully attempting to evade his income taxes under 26 U.S.C. § 7201, for the years 1989, 1990, 1991, and 1992. In his appeal, Neujahr argues that the district court improperly instructed the jury on his theory of defense. He contends that the district court failed to instruct the jury that it could consider whether Neujahr was acting in good faith and an honest belief that he was obeying the federal tax laws. In addition, Neujahr asserts that the trial court's instructions to the jury were unbalanced in favor of the government. Finally, Neujahr maintains that the trial court improperly excluded evidence tending to show a lack of specific intent or wilfullness on his part.

If the jury charge was slightly biased or unbalanced in favor of the government, we believe that this error was harmless. Indeed, the sheer weight of the evidence evinces Neujahr's guilt for evasion of income taxes. Moreover, we do not believe that the district court improperly limited the defendant's ability to present his case or to rebut evidence of willfulness. Thus, we affirm Neujahr's convictions.

I. FACTUAL AND PROCEDURAL BACKGROUND

By all accounts, George Neujahr successfully served in the United States Navy for many years as a nuclear specialist aboard nuclear sub-

2

marines. After he was discharged from the military in 1981, Neujahr embarked on a career as a nuclear consultant. He worked as an independent contractor for a time, and eventually he went to work for a nuclear consulting firm called Action Tech. He was an employee of this firm from 1987 to February 1989, and documents show that Action Tech paid Neujahr $8,370.00 in 1989. Record ("R.") 140.

In 1989, Neujahr offered his services as an independent contractor to the consulting firm Horace Cofer Associates. In that capacity, Neujahr earned $74,347.00 in 1989, $87,935.00 in 1990, and $98,528.00 in 1991, none of which income was subject to income tax withholding. R. 150, 152-53. In 1992, Neujahr was made a full-time employee of Horace Cofer Associates. When asked by his employer to fill out his W-4 Form, Neujahr claimed an exemption from income tax withholding. R. 156. Subsequently, Horace Cofer Associates paid Neujahr $105,658.00 for the year 1992, but the firm did not withhold taxes on Neujahr's income. R. 153, 157.

For the years 1981 through 1984, Neujahr had filed returns and he had paid all taxes on his income. R. 110. Yet in 1985, Neujahr sought tax advice from a certified public accountant. R. 266. The CPA told Neujahr that he must begin making quarterly tax payments on his independent contractor income. R. 266. In the course of this conversation, the CPA made an offhand remark that Neujahr had effectively been issued a "license to steal." R. 267. The CPA explained that Neujahr's income was not then subject to tax withholding and, indeed, the only income that Neujahr was reporting was on Forms 1099-MISC. In light of this discussion perhaps, Neujahr ceased to file tax returns.

In December 1992, Internal Revenue Service (IRS) tax auditor Michael Porter contacted Neujahr as part of a non-filer initiative and requested that Neujahr file returns. R. 30-31. Neujahr informed Porter that he had hired Myron Cohen, a New York attorney, to prepare his returns. R. 31-32. In early 1993, Neujahr sent Cohen a box of financial records and Rebecca Muller, a tax preparer in the firm, prepared Neujahr's tax returns on Forms 1040. R. 32-33. Neujahr discussed filing a 1040-NR instead. R. 33-34. A 1040-NR is the return filed by non-resident aliens who have earned income in this country. Muller informed Neujahr that he was not qualified to file a 1040-NR because

3

Neujahr was a citizen of the United States. Muller sent Neujahr the completed returns at the end of March 1993. R. 34-35.

In August 1993, Neujahr sent Muller a letter stating, "I destroyed every record that you used for tax returns -- suggest that you do the same with file copies before they are summoned by the IRS." R. 231, 395. After his call, Muller's firm destroyed the records for Neujahr that it ordinarily would have kept.

Neujahr did not file the returns prepared by Muller. Instead, he filed 1040-NR forms for 1985 through 1992. R. 117-18, 253-79. On the forms that he filed, Neujahr did not enter his social security number. He also drew diagonal slashes through the spaces provided for his social security number, listed "Connecticut" as his country of citizenship, and reported no taxes owed. R. 36, 117-18, 353-79. In addition, he altered the jurat, adding on the signature line,"with explicit reservation of all my rights in law, equity, and other natures of law expressly or by acquiescence." R. 36, 353-79. The IRS treated these documents as protest documents rather than as proper returns. In the Service's estimation, the forms did not include sufficient information from which they could determine what income tax should have been paid. R. 114.

On March 29, 1993, Neujahr furnished the Service with more documents and, particularly, with affidavits echoing a basic message: he was not subject to federal income taxation. Through these affidavits, Neujahr made the argument that he had renounced his rights under the Fourteenth Amendment to the United States Constitution. Among the rights renounced, Neujahr maintained that he had given up his right to vote, to possess a driver's license, and to hold a title to a motor vehicle. Having voluntarily waived the privileges of citizenship, Neujahr asserted that he was no longer beholden to its responsibilities. R. 39-44. In essence, through these affidavits, Neujahr asked to be treated not as a U.S. citizen, but rather as a non-resident alien.[1]

_____

[1] Neujahr also stated that he had severed all his relationships with banks and credit corporations, and that he maintained no bank accounts and held no credit cards. However, during his trial, it was learned that Neujahr had a checking account with Central Carolina Bank from 1989 to 1993 and that he was a co-holder of an American Express card during the period from 1989 to 1992.

Porter, the tax auditor for the IRS, testified that he could not determine the amount of Neujahr's tax liability relying solely on the documents supplied by Neujahr. Porter sensed that Neujahr was attempting to evade paying taxes, and he referred Neujahr's case to the Service's criminal prosecution division. R. 42-44.

On October 15, 1996, Neujahr was indicted and charged with four counts of attempted tax evasion in violation of 26 U.S.C. § 7201, based on his alleged failure to file proper returns for the years 1989, 1990, 1991, and 1992. At the trial, Neujahr elected to represent himself pro se. Importantly, the trial judge offered to appoint stand-by counsel for Neujahr. If such an offer is accepted, a pro se defendant has an opportunity to receive professional legal advice at any stage of the trial. Yet Neujahr turned down the trial judge's offer and, as a consequence, he received no assistance from legal counsel during the course of the trial. R. 20-24.

During the trial, which commenced on January 22, 1997, a Service agent, Herbert L. Lee, listened to the evidence regarding Neujahr's income and the deductions to which Neujahr would have been entitled. Not including interest and penalties, Lee calculated Neujahr's tax liability as being $14,794.00 for the year 1989; $15,920.00 for the year 1990; $17,344.00 for the year 1991; and $18,747.00 for the year 1992. R. 242-245. Evidence presented at trial also showed that Neujahr had identified himself as a U.S. citizen on an employment application. R. 192-93. The evidence also demonstrated that Neujahr lived in North Carolina instead of Connecticut during much of the period at issue. R. 194.

Neujahr argued in his own behalf and made two basic contentions. First, Neujahr testified that while he had been born in the United States, he had relinquished his citizenship under the Fourteenth Amendment. Therefore, he alleged that he had waived his duty as a United States citizen to pay federal income taxes. R. 40, 60-66. Neujahr stated that he attempted to memorialize the waiver of his Fourteenth Amendment rights by preparing and filing with the county courthouse in Duplin County, North Carolina a document entitled "Revocation of Power of Attorney." R. 419. Thereafter, Neujahr claimed that unless by necessity, he no longer used banks or other financial institutions, and he had even stopped using his social secur-

5

ity number altogether. R. 285. Second, and in the alternative, Neujahr testified that even if based on a mistaken or erroneous interpretation of the law, his actions were undertaken in good faith and were not a "willful" attempt to evade taxes. R. 285-290, 295-97, 299-300, 303.

Through cross-examination of Porter, the tax auditor for the Service, Neujahr also tried to show that he is not a bona fide "tax protestor." He elicited from Porter that, in fact, Neujahr had cooperated with the Service to the extent that he had submitted Forms W-2, and submitted a claim for reimbursement of taxes paid to the government. R. 54, 75, 98-99.

In his own testimony, Neujahr disclaimed the idea that he is a tax revolter. He pointed out that his end goal is not the overthrow of the federal tax system, but merely an acquittal on the ground that the federal tax laws do not apply to him. R. 285-86. Indeed, at trial, Neujahr tried to portray himself more as a tax facilitator than tax protester. He testified that he has helped prepare and file tax returns for his wife, who does not share his beliefs about the requirements of the federal tax laws. R. 285-86.

Whatever notion he wished to dispel, however, Neujahr did not contest that he filed 1040-NR's without including his wage income on the forms. Moreover, when questioned, he also did not dispute the fact that he earned the amount of the income described above. R. 306-7.

At the close of all the evidence, the district court prompted Neujahr to make a proper motion for judgment of acquittal. The court subsequently denied that motion. R. 314, 321-22. Afterward, the district court stated that on behalf of Neujahr, it was noting an objection to each of the court's jury instructions. R. 314, 321-22. Neujahr was convicted of all charges in the indictment and was sentenced to 21 months in prison. R. 442.

6

II. ANALYSIS

A. Jury Instructions

Neujahr argues that the district court improperly instructed the jury on his theory of defense. Neujahr asserts further that the trial court's jury charge was biased in favor of the government. We review the district court's jury instructions in their entirety and as part of the whole trial. United States v. Lowe, 65 F.3d 1137, 1146 (4th Cir. 1995), cert. denied, 117 S. Ct. 49 (1996). The Court focuses on whether the district court adequately instructed the jury regarding the elements of the offense and the accused's defenses. United States v. Fowler, 932 2d. 306, 317 (4th Cir. 1991). A district court's decision on jury instructions is reviewed for abuse of discretion and is affirmed if the error was harmless. United States v. Lozano, 839 F.2d 1020, 1024 (4th Cir. 1988).[2]

1. Good Faith Defense Instruction

To prove a violation of 26 U.S.C. § 7201, felony tax evasion, the government must prove, and the jury must find that: 1) a substantial tax was owed by the defendant; 2) the defendant attempted to evade or defeat the assessment or payment of the tax; and 3) in attempting to evade or defeat the tax, the defendant acted willfully. Willfulness, in this context, means a voluntary, intentional violation of a known

_____

[2] Usually, an instruction is reviewed for plain error when the defendant has not raised a proper objection at trial. See Klein v. Sears Roebuck & Co., 773 F.2d 1421 (4th Cir. 1985) (holding that failure to object to limiting instruction pursuant to Fed. R. Civ. P. 51 and no offer of limiting instruction of its own insulates instruction from reversal unless the instruction given amounts to plain error). Although Neujahr did not specifically object to any of the instructions, he did complain to the court that the charge was "pretty weighted for the government." R. 343. In addition, at the close of the charge conference, the district court stated that in order to preserve Neujahr's appellate rights, it was noting an objection on Neujahr's behalf to each of the court's jury instructions. R. 314, 321-322. Without expressing its opinion on the propriety of the district court's blanket objection on Neujahr's behalf, we believe that Neujahr's general complaint coupled with the district court's objection are sufficient to avoid the more stringent plain error standard of review.

legal duty. <u>Cheek v. United States</u>, 498 U.S. 192, 201 (1991); <u>United States v. Pomanio</u>, 412 U.S. 346, 360 (1973).

A belief, in good faith, that one has complied with the tax laws negates willfulness and is therefore a defense, even if the belief is unreasonable. <u>Cheek</u>, 498 U.S. 192. In other words, the government must demonstrate that the defendant did not have a subjective belief, however irrational or unreasonable, that the income tax system did not apply to him. <u>Id.</u> Furthermore, "good faith" instructions are routinely given in tax evasion cases. <u>See United States v. Hirschfield</u>, 964 F.2d 318 (4th Cir. 1992), <u>cert. denied</u>, 510 U.S. 1112 (1994); <u>United States v. Becker</u>, 965 F.2d 383, 388 (7th Cir. 1992), <u>cert</u>. <u>denied</u>, 507 U.S. 971 (1993).

The Supreme Court has held, however, that a separate instruction on good faith is unnecessary in a criminal tax case where the trial court has adequately instructed the jury on willfulness. <u>See Cheek</u>, 498 U.S. at 201. <u>See also United States v. Hardy</u> , 941 F.2d 893, 897 (9th Cir. 1991) (upholding denial of proposed good faith instruction where trial court correctly instructed on willfulness). The Fourth Circuit has similarly held that a correct instruction on willfulness or specific intent eliminates the need for a separate instruction that good faith is a defense. <u>See United States v. Fowler</u> , 932 F.2d 306, 317 (4th Cir. 1991).

In this case, the trial court repeatedly instructed the jury that Neujahr's conduct had to be willful in order to constitute an offense. R. 333-38. The trial court provided members of the jury with proper examples of behavior constituting willfulness or from which willfulness can be inferred. In addition, the court properly defined "willfully" for members of the jury:

> The word "willfully" as used in this statute means a voluntary, intentional violation of a known legal duty. An act or failure to act is willfully done if done voluntarily and intentionally, and with the specific intent to do something the law forbids, . . . that is to say, with a purpose either to disobey or disregard the law.

By itself, the charge implicitly required the jury to consider that behavior falling short of "willfulness" may signify the defendant's

8

good faith and honest belief that he was obeying a legal duty. See Fowler, 932 F.2d at 317; Dorotich, 900 F.2d at 194. The trial court did not err simply because the words "good faith" were never mentioned to the jury. When viewed in their entirety and as part of the whole trial, the lower court's instructions properly defined willfulness and focused the jury's attention on the essential issue of Neujahr's intent. See United States v. Lowe, 65 F.3d at 1146.

Neujahr argues that other Courts of Appeals have held that a trial court errs when it fails to instruct the jury on a defendant's good faith belief that he did not have to pay taxes. See United States v. Morris, 20 F.3d 1111 (11th Cir. 1994); United States v. Doyle, 956 F.2d 73 (5th Cir. 1992); and United States v. Powell, 955 F.2d 1206 (9th Cir. 1992). As noted above, however, the Supreme Court has decided that it is not necessary that a trial court issue a separate good faith instruction. Moreover, in each of the cases cited, the defendant had specifically requested that the good faith instruction be given, and the trial court denied this request.

Neujahr made no such request for a good faith instruction at his trial. Granted, Neujahr was a pro se defendant at his criminal trial. Our system of justice, however, provides criminal defendants, and it provided Neujahr, with the right to be represented by legal counsel. Neujahr voluntarily waived his right to counsel at his criminal trial. Moreover, the trial judge had offered to appoint stand-by counsel for Neujahr. Yet Neujahr rejected the trial court's invitation to have a trained legal professional on hand to provide him with legal advice. R. 20-24.

Still, even without counsel, Neujahr was fully capable of requesting specific instructions. He asked the trial court for an instruction on the credibility of witnesses' testimony and on whether certain constitutional amendments could be waived. R. 320-21. More important perhaps, the district judge did not abuse his discretion in omitting a good faith instruction that Neujahr had never requested. The district judge repeatedly reminded members of the jury that Neujahr's conduct must be willful to constitute an offense. The district judge provided jurors with a proper definition of "willfully" and, as further assurance of juror understanding, the trial judge gave examples of what constitutes willful behavior. Accordingly, the Court does not

9

find that the district court erred when it failed to give a good faith instruction to the jury.

2. Unbalanced Nature of Jury Instructions

Neujahr next argues that when viewed as a whole, the district court's charge in this case was seriously skewed in favor of the government and that this error was prejudicial. We disagree.

The trial court's instructions to the jury are designed to inform the jury of its duty to determine facts independently and to apply those facts to the law as charged by the court. United States v. McCracken, 488 F.2d 406, 414 (5th Cir. 1974). "Instructions must not, therefore, be argumentative or slanted in favor of either side . . . [the instructions] should neither `unduly emphasize the theory of the prosecution, thereby de-emphasizing proportionally the defendant's theory' . . . nor overemphasize the importance of certain evidence or certain parts of the case." Id. (quoting Perez v. United States, 297 F.2d 12, 16 (5th Cir. 1961). When viewed in their entirety, the instructions must adequately permit each party to argue its theory to the jury. United States v. Newport, 747 F.2d 1307, 1316 (9th Cir. 1984).

Neujahr asserts that the jury instructions reinforced the government's theory of the case because the instructions included illustrations of willfulness. The trial court instructed the jury that willfulness could be inferred if an individual: 1) had consistently failed to report income, 2) had made or used false documents, 3) had altered or destroyed records, 4) had made false statements, or 5) had engaged in other conduct likely to mislead or conceal. R. 335. In addition, the district court instructed the jury that Neujahr's chronic failure to file taxes for the years 1985 to 1992 could be considered evidence of willfulness. In determining willfulness, the district court instructed the jury that Neujahr's receipt of 1099 tax forms could be viewed as a reminder of Neujahr's duty to file tax returns. The district court further instructed the jury that it could infer that Neujahr knew the contents of his W-4 forms. Finally, the court instructed the jury that it could infer that Neujahr was aware of his obligations as a taxpayer since Neujahr had filed federal tax returns before 1985.

Suffice it to say, the examples included in the jury charge involved similar conduct to which Neujahr was being accused. Importantly,

10

however, the district court explained that the examples were for illustration purposes only. In the trial judge's own words, "I do not by this instruction mean to imply that the defendant did engage in any such conduct. It is for [the jury] as the trier of facts to make this determination." R. 335. The illustrations were not overly suggestive and, of course, Neujahr could always have requested that the district judge give examples showing a lack of wilfulness. Neujahr did not make such a request and, on appeal, he has not alleged that the trial judge incorrectly stated the law.

Therefore, when viewed as a whole, the instructions do not unduly emphasize the government's theory of the case. Furthermore, the evidence compiled against Neujahr points directly toward his guilt, making harmless any possible bias in the instructions for the government's theory of the case.

Nevertheless, Neujahr maintains that his case must be decided in light of United States v. Dove, 916 F.2d 41 (2d Cir. 1990). In that case, the United States Court of Appeals for the Second Circuit held that the trial court's jury instructions were unbalanced and prejudicial. The Second Circuit noted that the trial court had instructed the jury that it could find the defendant guilty beyond a reasonable doubt even though eyewitnesses had failed to identify the defendant in open court. Id. Further, the court pointed out that the trial court had utilized a hypothetical that assumed the guilt of the defendant when instructing the jury about the difference between direct and circumstantial evidence. Id. at 44.

In finding both instructions unbalanced and prejudicial, the Second Circuit explained why:

> It was possible for the jury to conclude, based on the instructions given, that it need not attach any significance to the fact that the two eyewitnesses could not identify the defendant in open court. In this respect, the charge was unbalanced because it instructed the jury as to how the witness's inability to identify the defendant might bear on guilt without indicating how this rather significant evidence might bear on innocence.

11

Id. at 45. The appellate court further reasoned that the trial court had needed to inform the jury that it could consider circumstantial evidence leaning toward innocence along with any evidence of guilt. Id. at 46.

In this proceeding, however, the trial court's instructions struck a proper balance on what might constitute guilt and what might constitute innocence. Indeed, the instructions did not emphasize that a lack of wilfulness should be disregarded. Rather, the district judge was clear in his instructions that members of the jury must consider possible guilt in light of all the evidence before them:

> [T]he only way to arrive at the intention of the defendant in this case is for you to take into consideration all of the facts and circumstances shown by the evidence and to determine from all such facts and circumstances whether it was the intent of the defendant at the time in question to evade federal income taxes. R. 334.

In addition, the trial court's instructions only clarified the proper state of mind for the underlying offense. The trial court did not discuss whether the mens rea requirement was satisfied in the absence of certain evidence, or, for that matter, whether guilt could be established beyond a reasonable doubt.

Nonetheless, Neujahr also claims that the court improperly invaded the province of the jury with its instruction that the 1040-NRs filed by Neujahr were not valid returns as a matter of law. In United States v. Johnson, 71 F.3d 139, 142 (4th Cir. 1995), this Court decided that a trial court may not direct a verdict in favor of the government no matter how overwhelming the evidence. Neujahr's basic argument, therefore, is that the trial court's charge veered dangerously close to directing a verdict in favor of the government.

The Eleventh Circuit's decision in United States v. Goetz, 746 F.2d 705 (11th Cir. 1984), sheds important light on this issue. In that case, the Eleventh Circuit held that the district court erred in its instruction that defendants' tax forms were not returns as a matter of law where the filed forms contained no income information. The court explained that an instruction can inform the jury that a tax form without finan-

12

cial information is not a "return" within the meaning of the tax code. According to the court, however, the trial court erred when it applied the law to the facts and instructed jury members that the particular forms filed by the defendants were not returns as a matter of law. Id. at 708.

Yet in Goetz, the trial court had directed a verdict as to an essential element of the underlying offense. In the misdemeanor willful failure to file case, the trial judge had instructed the jury that, as a matter of law, documents filed by the defendants were not returns. Goetz, 746 F.2d at 708. The Goetz court found reversible error on the ground that failure to file a return is an essential element of 26 U.S.C. § 7203. Id.

Likewise, in Johnson, the district judge had instructed the jury in a bank robbery case that, as a matter of law, the credit union was federally insured. 71 F.3d at 142. The Fourth Circuit found reversible error because the federally insured status of the credit union as defined in 18 U.S.C.A. § 2113(g) is an essential element of the crime. Id.

In this case, however, failure to file is not an essential element of felony tax evasion. See 26 U.S.C. § 720. For that reason, the trial court could not possibly have directed a verdict in favor of the government as to one of the elements of the underlying offense. As the government points out, Neujahr's failure to file a return is alleged in the indictment simply as a "means" by which he committed the offense. Standing alone, it was not sufficient to establish an "attempt" to evade taxes, which is an essential element of the offense requiring some willful commission of an affirmative act. In other words, failure to file is not an affirmative act.

Even assuming the contrary, the trial court made perfectly clear that "the question of willfulness or intent is a matter for you, as jurors, to determine." R. 334. Therefore, any error in instructing the jury that the forms 1040-NR were not "returns" was harmless and not prejudicial. In fact, even in the absence of the instruction, the evidence against Neujahr conclusively supported a jury verdict of guilty.

B. Admission of Evidence

Neujahr asserts that the trial court erred when it limited his ability to rebut evidence of willfulness. He argues that he was prevented

13

from presenting a good faith defense that he believed he was not violating the federal tax laws.

In particular, Neujahr maintains that the trial court did not permit him to interpret the Uniform Commercial Code and the law of contracts as it relates to his obligations under the tax laws. He points out as well that the trial judge limited his remarks when he tried to explain why he believed the 1040-NR forms he filed were not fraudulent. Neujahr further complains that the trial judge would not permit him to explain the legal significance of the "Revocation of Power of Attorney," which allegedly waived his rights under the Fourteenth Amendment. Finally, Neujahr asserts that the trial judge would not allow him to convey his understanding of a tax return or tax record, or allow him to cite to those relevant portions of the tax code.

Issues regarding the trial court's evidentiary rulings are reviewed under an abuse of discretion standard. United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994). This Court has recently elaborated on the exact definition of "abuse of discretion." The Court has clarified that the admission and exclusion of evidence are within the sound discretion of the district court. Thus, the Court will find that a district court "abused its discretion regarding evidentiary rulings only if the district court `acted arbitrarily or irrationally.'" United States v. Achiekwelu, 112 F.3d 747, 753 (4th Cir. 1997).

Forbidding the jury to consider evidence that might negate willfulness calls into question the right to a jury trial under the Sixth Amendment. Thus, a defendant in a tax evasion case is entitled to wide latitude in his ability to introduce evidence tending to show a lack of specific intent or willfulness. United States v. Payne, 978 F.2d 1177, 1182 (10th Cir. 1992). "Although a district court may exclude evidence of what the law is or should be, . . . it ordinarily cannot exclude evidence relevant to the jury's determination of what a defendant thought the law was . . . [when] willfulness is an element of the offense." United States v. Powell, 955 F.2d 1206, 1214 (9th Cir. 1992).

Nevertheless, this right of defendants must still comply with procedures governing the Federal Rules of Evidence. See Fed. R. Evid. 401-403; Cheek, 498 U.S. at 202. Under the Rules of Evidence, the

14

trial court is vested with broad discretion to control the manner of witness examination and the introduction of evidence. This is to ensure that witnesses are treated fairly and the interests of truth and justice are not hampered by "presentation of extraneous, prejudicial, or confusing material." United States v. Gravely , 840 F.2d 1156, 1163 (4th Cir. 1988).

Certainly, Neujahr did not enjoy unlimited license to present his case as he saw fit. Yet the district court properly regulated Neujahr's case as it concerned the state of the law, not his interpretation of the law. See United States v. Mann, 884 F.2d 532, 538 (10th Cir. 1989) (it is for the trial court to instruct the jury regarding the law; therefore, the court may limit evidence to relevant facts only, restricting witnesses from commenting on what the law is). In fact, as even Neujahr has admitted, the trial judge gave the pro se litigant considerable leeway in his manner of interrogation and presentation of evidence.

Furthermore, Neujahr has failed to demonstrate that any of the court's rulings resulted in prejudice. See United States v. Loayza, 107 F.3d 257, 263 (4th Cir. 1997) (review of exclusion of evidence is subject to harmless error rule); Payne, 978 F.2d at 1181 (exclusion of evidence not basis for reversal unless exclusion is so significant that it results in actual prejudice because it has a substantial or injurious effect or influence in determining the jury's verdict). Thus, any restrictions placed on Neujahr's presentation of his case were not improper. Even assuming otherwise, such restrictions were not prejudicial in view of the evidence accumulated against him.[3] Accordingly,

_____

[3] Furthermore, despite the appropriate restrictions imposed by the district court, Neujahr was allowed to introduce a great deal of evidence relating to his claimed beliefs. Neujahr introduced into evidence several documents he had sent to the IRS and several other individuals describing his purported belief that he was not a citizen of the United States and that he was not required to pay taxes. R. 49-56, 59-66, 68-75, 77-99. These documents referred to several court cases, U.C.C. provisions, and other legal materials. Neujahr also introduced into evidence signed documents with the proviso "UCC 1-207 discharged without prejudice" or signed "with explicit reservation of all my rights in law, equity, and all other natures of law expressly or by acquiescence." R. 156, 297, 387, 393, 398. Neujahr also testified that he had researched the Constitution;

the district court did not abuse its discretion when it limited Neujahr's testimony regarding his claimed good faith belief that he had not violated the tax laws.

III. CONCLUSION

Because we find no reversible error committed by the district court, we affirm Neujahr's convictions.

AFFIRMED

_____
the works of Thomas Jefferson, James Madison, and Alexander Hamilton; and contract law. R. 286. Thus, it appears that Neujahr was granted wide latitude to lay out his claimed beliefs and the authorities upon which he allegedly based those beliefs. See Payne, 978 F.2d at 1181-82; Powell, 955 F.2d 1206, 1214.

16