# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP173-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>　　　　　Plaintiff-Respondent,<br>　　v.<br>Brian Grandberry,<br>　　　　　Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 372 Wis. 2d 834, 890 N.W.2d 49
(2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | April 10, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 20, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| 　COURT: | Circuit |
| 　COUNTY: | Milwaukee |
| 　JUDGE: | Janet C. Protasiewicz |

| | |
|---|---|
| JUSTICES: | |
| 　CONCURRED: | KELLY, J. concurs (opinion filed). |
| 　DISSENTED: | R.G. BRADLEY, J. dissents (opinion filed). |
| 　NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs and an oral argument by *Leon W. Todd,* assistant state public defender.

For the plaintiff-respondent, there was a brief and oral argument by *Jeffrey J. Kassel*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

Amici curiae briefs were filed on behalf of Wisconsin Carry, Inc. by *John R. Monroe* and *John Monroe Law*, *P.C.*, Roswell, Georgia.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP173-CR
(L.C. No. 2014CM4581)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

      v.

Brian Grandberry,

    Defendant-Appellant-Petitioner.

**FILED**

**APR 10, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of an unpublished decision of the court of appeals, which affirmed the Milwaukee County Circuit Court's[1] judgment of conviction against Brian Grandberry. State v. Grandberry, No. 2016AP173-CR, unpublished slip op., ¶9 (Wis. Ct. App. Nov. 29, 2016).

¶2 Grandberry was convicted of carrying a concealed and dangerous weapon contrary to Wis. Stat. § 941.23(2) (2013-14)[2]

---

[1] The Honorable Janet C. Protasiewicz presiding.

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

(the "Concealed Carry Statute"), resulting from an incident in which police discovered a handgun in the glove compartment of his motor vehicle during a traffic stop. Grandberry appealed his conviction, arguing that his conduct was in compliance with Wis. Stat. § 167.31(2)(b), which regulates the transportation of firearms in motor vehicles (the "Safe Transport Statute"),[3] and that his compliance with the Safe Transport Statute precluded his conviction under the Concealed Carry Statute. The court of appeals affirmed, holding that compliance with the Safe Transport Statute does not preclude conviction for a violation of the Concealed Carry Statute.

¶3 Grandberry raises two issues. First, he argues that there is insufficient evidence to support his conviction. He reaches this conclusion by asserting that a conflict exists between the two statutes that can be resolved only by holding that persons in compliance with the Safe Transport Statute do not violate the first element of the crime of carrying a concealed and dangerous weapon contrary to the Concealed Carry Statute. We hold that the Concealed Carry Statute and Safe Transport Statute are not in conflict because Grandberry could have complied with both by either obtaining a license to carry a

---

[3] Although we have previously referred to Wis. Stat. § 167.31(2)(b) as the "vehicle statute," Wisconsin Carry, Inc. v. City of Madison, 2017 WI 19, ¶12, 373 Wis. 2d 543, 892 N.W.2d 233, we adopt the term used by the parties and court of appeals, "Safe Transport Statute," because it hews more closely to the actual text of the statute, which is entitled "Safe use and transportation of firearms and bows."

2

concealed weapon pursuant to Wis. Stat. § 175.60 (hereinafter "concealed carry license" or "license") or by placing his loaded handgun out of reach.

¶4 Second, Grandberry argues that the Concealed Carry Statute is unconstitutionally vague because a person of ordinary intelligence would reasonably believe that complying with the Safe Transport Statute is sufficient to lawfully place a loaded, uncased handgun in the glove compartment of a motor vehicle. We hold that the Concealed Carry Statute is not unconstitutionally vague because a person of ordinary intelligence has sufficient notice that carrying a concealed and dangerous weapon is unlawful unless one of the enumerated exceptions in the Concealed Carry Statute applies.

¶5 Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶6 Grandberry was charged with one count of carrying a concealed and dangerous weapon, contrary to Wis. Stat. § 941.23(2). The charge arose out of a traffic stop in the City of Milwaukee. At the bench trial held on the matter, Grandberry and the State stipulated to the truth of the facts in the criminal complaint. Accordingly, no testimony was taken. The complaint states, in relevant part:

> On November 9, 2014, [two] City of Milwaukee Police Officer[s] . . . conducted a [traffic] stop of a vehicle . . . driven by the defendant [on] N. 60th St. Upon stopping the vehicle, the defendant identified himself by name but stated he did not have his wallet [or] identification. [One officer] then asked the defendant if he had any firearms in the car[,] and the

3

defendant stated he did[,] in the glove compartment. [The officer] then asked the defendant if he had a valid [concealed carry license] and the defendant stated he did, but did not have it with him. Officers then conducted a search of the [license] database and discovered that the defendant did not, in fact, have a valid [concealed carry license]. Officers then went to the glove compartment and discovered a loaded, Hi-Point, .45 [caliber], semi-automatic pistol.

Upon arresting the defendant and conveying him to the station, the defendant made unprovoked statements to the effect of[:] "The gun in the glove compartment is mine, I took the [concealed carry license] class but never actually got a [license]." Additionally, the defendant is not a peace officer.

Based upon these facts, the circuit court entered a judgment of conviction against Grandberry. Grandberry then appealed his conviction.

¶7   The court of appeals affirmed, holding that the Safe Transport Statute did not apply to Grandberry.[4] Grandberry, unpublished slip op., ¶9. The court of appeals then applied the

---

[4] The court of appeals concluded that the Safe Transport Statute "only applies [sic] to those who have passed the rigorous conditions for obtaining a [concealed carry license]" because the Safe Transport Statute borrows the definition of "Handgun" from Wis. Stat. § 175.60, which regulates concealed carry licenses. State v. Grandberry, No. 2016AP173-CR, unpublished slip op., ¶9 (Wis. Ct. App. Nov. 29, 2016).

We pause briefly to expressly note our disagreement with this analysis, as it lacks any support in the language of either of the relevant statutes. Furthermore, merely defining a term by reference to another statute does not expand or limit the scope of the original statute. The United States Court of Appeals for the D.C. Circuit aptly stated this concept when it said "[w]hen one statute . . . incorporates a definition from another . . . it imports only the specified definition and not the broader purpose of the statute from which it comes." Owens v. Republic of Sudan, 864 F.3d 751, 776 (D.C. Cir. 2017).

4

stipulated facts to the elements of Wis. Stat. § 941.23(2), and held that the State proved all elements beyond a reasonable doubt.  <u>Id.</u>, ¶11.

¶8   As to the second issue, the court of appeals held that the Concealed Carry Statute is not unconstitutionally vague because Grandberry had actual knowledge that he needed a concealed carry license to lawfully carry a concealed handgun in the glove compartment of his motor vehicle.  <u>Grandberry</u>, unpublished slip op., ¶19.

¶9   Grandberry petitioned this court for review, which we granted on March 13, 2017.

## II.  STANDARD OF REVIEW

¶10 Grandberry challenges the sufficiency of the State's evidence to support his conviction.  "We . . . independently review whether the evidence was sufficient to sustain a jury verdict, but in so doing, we view the evidence most favorably to sustaining the conviction."  <u>State v. Hanson</u>, 2012 WI 4, ¶15, 338 Wis. 2d 243, 808 N.W.2d 390.

¶11 The proper interpretation of Wis. Stat. §§ 167.31(2)(b) and 941.23(2) is foundational to Grandberry's sufficiency-of-the-evidence challenge; we review issues of statutory interpretation de novo.  <u>Id.</u>, ¶15.  "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute."  <u>State ex rel. Kalal v. Circuit Court for Dane Cty.</u>, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).  We assume that legislative intent is expressed in the statutory language.  <u>Id.</u>, ¶43.  We

5

interpret statutory language in context, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id., ¶46 (citations omitted).

¶12 This case also requires us to determine whether Wis. Stat. § 941.23(2) is unconstitutionally vague. The constitutional validity of a statute presents a question of law that this court reviews de novo. State v. Pittman, 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993). "It falls to the party challenging the constitutionality of a statute to prove that the statute is unconstitutional beyond a reasonable doubt." State v. Cole, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328. The court indulges "every presumption to sustain the law . . . and if any doubt exists about a statute's constitutionality . . . [the court] must resolve that doubt in favor of constitutionality." Id.

### III. ANALYSIS

¶13 We begin our analysis by first setting out the relevant portions of both the Concealed Carry and Safe Transport Statutes. We then address Grandberry's argument that a person in compliance with the Safe Transport Statute cannot, as a matter of law, violate the first element of the Concealed Carry Statute, which he frames as a sufficiency-of-the-evidence challenge. Finally, we address Grandberry's argument that the Concealed Carry Statute is unconstitutionally vague.

6

A. Statutory Background

1. The Concealed Carry Statute

¶14 The Concealed Carry Statute, with certain exceptions, criminalizes the carrying of concealed and dangerous weapons. The Concealed Carry Statute states, in relevant part:

> (2) Any person, other than one of the following, who carries a concealed and dangerous weapon is guilty of a class A misdemeanor:
>
> > (a) A peace officer . . .
> > (b) A qualified out-of-state law enforcement officer . . .
> > (c) A former officer . . .
> > (d) A licensee, as defined in s. 175.60(1)(d)[5] . . .
> > (e) An individual who carries a concealed and dangerous weapon, as defined in s. 175.60(1)(j),[6] in his or her own dwelling or place of business . . .

Wis. Stat. § 941.23(2).

¶15 We read the Concealed Carry Statute as having two parts. First, we refer to the part that creates the crime of carrying a concealed and dangerous weapon as the "general prohibition:" "Any person . . . who carries a concealed and

---

[5] "Licensee" is defined as "an individual holding a valid license to carry a concealed weapon." Wis. Stat. § 175.60(1)(d).

[6] "Weapon" is defined as "a handgun, an electric weapon, . . . or a billy club." Wis. Stat. § 175.60(1)(j).

7

dangerous weapon[7] is guilty of a Class A misdemeanor."  See id.
In order to convict a defendant of carrying a concealed and
dangerous weapon contrary to Wis. Stat. § 941.23(2), the State
must prove three elements:

1.  The defendant carried a dangerous weapon.
    "Carried" means went armed with.

2.  The defendant was aware of the presence of the
    weapon.

3.  The weapon was concealed.

Wis JI——Criminal 1335 (2016).

¶16 Almost 90 years ago, we first used the term "within
reach" to describe when a person "goes armed" with a concealed
and dangerous weapon for purposes of the Concealed Carry
Statute.  Mularkey v. State, 201 Wis. 429, 432, 230 N.W. 76
(1930) ("[T]he driver of an automobile goes armed, within the
meaning of [the Concealed Carry Statute], when he has a
dangerous weapon within reach on a shelf in back of his seat.").
Nearly 50 years later, the definition was subsequently clarified
so that "'going armed' [with a concealed and dangerous weapon]
meant that the weapon was on the defendant's person or that the
weapon [was] within the defendant's reach . . . ."  State v.
Asfoor, 75 Wis. 2d 411, 433-34, 249 N.W.2d 529 (1977).  We
articulated the current definition of "went armed with" in State

_____

[7] For purposes of the general prohibition, a "dangerous
weapon" includes "any firearm, whether loaded or unloaded."
Wis. Stat. § 939.22(10).  We note that, for purposes of the
exception enumerated in Wis. Stat. § 941.23(2)(e), the
legislature provided a narrower definition.  See supra note 6.

8

v. Fry, 131 Wis. 2d 153, 182, 388 N.W.2d 565 (1986) (emphasis added) ("The elements of the crime of carrying a concealed weapon are: (1) the defendant had a dangerous weapon on his person or within his reach . . . ."), overruled on other grounds by State v. Dearborn, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97.

¶17 The statute's second part sets forth enumerated exceptions to the general prohibition. Wis. Stat. § 941.23(2)(a)-(e). These exceptions are affirmative defenses to a charge of unlawfully carrying a concealed and dangerous weapon. State v. Williamson, 58 Wis. 2d 514, 524, 206 N.W.2d 613 (1973) (holding that defendants must raise their status as a peace officer as an affirmative defense). The enumerated exceptions were expanded in 2011. 2011 Wis. Act. 35, §§ 50-56. Before the 2011 amendment, only peace officers could lawfully carry a concealed and dangerous weapon. Wis. Stat. § 941.23(2) (2009-10).

2. The Safe Transport Statute

¶18 The Safe Transport Statute states in relevant part:

(b) [N]o person may place, possess, or transport a firearm[8] . . . in or on a vehicle, unless one of the following applies:

1. The firearm is unloaded or is a handgun.[9]

---

[8] "Firearm" is defined as "a weapon that acts by force of gunpowder." Wis. Stat. § 167.31(1)(c).

Wis. Stat. § 167.31(2)(b)1.[10]  This statute was amended in the same act that created Wisconsin's concealed carry license regime.  2011 Wis. Act. 35, § 31.  Prior to the 2011 amendment, the Safe Transport Statute required all firearms (including handguns) that were placed within a motor vehicle to be unloaded and encased.  Wis. Stat. § 167.31(2)(b) (2009-10).  The current version of the statute does not include a requirement that any firearm be encased. § 167.31(2)(b).  Further, though the statute generally requires firearms be unloaded, it expressly excepts handguns from this requirement.  § 167.31(2)(b)1.  Therefore, under the terms of the Safe Transport Statute, handguns in a motor vehicle may be both loaded and uncased.[11]  Id.

B.  Grandberry's Conviction is Supported by Sufficient Evidence.

  1.  The nature of Grandberry's argument

---

[9] "Handgun" is defined as "any weapon designed or redesigned, or made or remade, and intended to be fired while held in one hand and to use the energy of an explosive to expel a projectile through a smooth or rifled bore."  Wis. Stat. § 167.31(1)(cm) (citing Wis. Stat. § 175.60(1)(bm)).  Machine guns, short-barreled rifles, and short-barreled shotguns are specifically excepted from the definition of "handgun."  Wis. Stat. § 175.60(1)(bm).

[10] The Safe Transport Statute does not apply "to a firearm that is placed or possessed on a vehicle that is stationary." Wis. Stat. § 167.31(4)(ag).

[11] The State does not contest that Grandberry complied with the Safe Transport Statute, nor do we find any reason to conclude he did not.  Thus, we assume without deciding that Grandberry did comply with its terms.

10

¶19 Grandberry frames his first issue as a sufficiency-of-the-evidence challenge; however, Grandberry does not raise the challenge in the traditional sense such that he asks us to review the evidence and apply it to the elements of the Concealed Carry Statute in order to determine whether there is "sufficient evidence" to support his conviction. See State v. Smith, 2012 WI 91, ¶41, 342 Wis. 2d 710, 817 N.W.2d 410. Rather, Grandberry uses his sufficiency of the evidence argument as the means by which he argues that the relevant statutes are in conflict.

¶20 Grandberry's argument consists of three components: two premises and a conclusion. His first premise is that the two statutes are in conflict because the same conduct——placing a loaded handgun in a motor vehicle——can comply with the Safe Transport Statute yet violate the Concealed Carry Statute. His second premise is that this purported conflict between the statutes must be resolved by a holding from this court that a person in compliance with the Safe Transport Statute does not "carry" for purposes of the Concealed Carry Statute.[12]

---

[12] Grandberry refers to his second premise as a "safe harbor." His use of this phrase is an improper inversion of that term of art, as a safe harbor is defined as "a provision (as in a statute or regulation) that affords protection from liability or penalty." Black's Law Dictionary 1536 (10th ed. 2014). No statute contains a provision affording the protection Grandberry seeks and we decline to either invent one or to contort our reading of the plain language of the statutes to suit Grandberry's purposes. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("If the meaning of the statute is plain, we ordinarily stop the inquiry.").

(continued)

Grandberry's conclusion is that he complied with the Safe Transport Statute, and so, as a matter of law, his conduct could not violate the first element ("carry") of the offense of carrying a concealed and dangerous weapon contrary to the Concealed Carry Statute.

### 2. The Safe Transport Statute and Concealed Carry Statute are not in conflict.

¶21 Grandberry's first premise is false because the two statutes are not in conflict. In order for two statutes to be in conflict, it must be impossible to comply with both. See City News & Novelty, Inc. v. Waukesha, 170 Wis. 2d 14, 22, 487 N.W.2d 316 (Ct. App. 1992). The two statutes serve distinct purposes: the Safe Transport Statute regulates the transportation of firearms in motor vehicles to ensure the transportation is done safely, see Wis. Stat. § 167.31 (entitled "Safe use and transportation of firearms and bows."),[13] while the

---

Grandberry bases his "safe harbor" argument on a footnote in a court of appeals decision in which the court clarified that its holding, which concerned whether a firearm was concealed for purposes of the Concealed Carry Statute, "in no way limits the lawful placement, possession, or transportation of[] unloaded . . . and encased[] firearms . . . in vehicles as permitted by [the Safe Transport Statute]." State v. Walls, 190 Wis. 2d 65, 69 n.2, 526 N.W.2d 765 (Ct. App. 1994) (emphasis in original). The "safe harbor" argument is relevant only if the statutes are in conflict. Thus, we decline to further consider the merits of Grandberry's reading of Walls because we conclude the statutes are not in conflict.

[13] "Although titles are not part of statutes, Wis. Stat. § 990.001(6), they may be helpful in interpretation." Aiello v. Pleasant Prairie, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996).

Concealed Carry Statute regulates the carrying of concealed firearms to ensure the safety of the public, see State v. Walls, 190 Wis. 2d 65, 71, 526 Wis. 2d 765 (Ct. App. 1994) (quoting Williams v. Commonwealth, 261 S.W.2d 807, 807-808 (Ky. 1953) (governments historically prohibited the carrying of concealed weapons "because persons becoming suddenly angered and having such a weapon in their pocket[] would be likely to use it, which in their sober moments they would not have done, and which could not have been done had not the weapon been upon their person.")). When a person places a loaded handgun in a motor vehicle, he can both transport a firearm in that motor vehicle (an act governed by the terms of the Safe Transport Statute) and carry a concealed and dangerous weapon (an act governed by the Concealed Carry Statute). Contrary to Grandberry's assertions, compliance with both statutes is not only possible, it is required.

¶22 Grandberry argues that it is impossible to comply with the Safe Transport Statute without violating the Concealed Carry Statute. Grandberry asserts that "Wisconsin courts have . . . generally considered firearms located anywhere inside the interior portion of a vehicle to be within a defendant's reach and thus 'carried' for purposes of the [Concealed Carry Statute]." According to Grandberry, a person who transports a loaded handgun in a motor vehicle that lacks a trunk separate from the passenger area (e.g., a minivan, SUV, hatchback, or station wagon) complies with the Safe Transport Statute yet is always in violation of the Concealed Carry Statute. This is so,

13

he says, because the loaded handgun would always, as a matter of law, be "within reach," and thus "carried" for purposes of the Concealed Carry Statute.

¶23 This would be a compelling argument if it were true. As it is, however, his assertion is wholly unsupported by any statute, case law, or regulation.[14]

¶24 Grandberry, perhaps recognizing that no Wisconsin court has ever defined "within reach" as broadly as he does, seeks to bolster his reading of the statute by drawing an analogy to search incident to arrest law under the Fourth Amendment. The Fourth Amendment permits warrantless searches "within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary [item].'" New York v. Belton, 453

---

[14] Grandberry cites four cases to support the proposition that Wisconsin courts consider the entire passenger area "within reach," as a matter of law, for purposes of the Concealed Carry Statute. In two of them, we merely considered whether a reasonable finder of fact could conclude that the firearm was "within reach" in the circumstances of each particular case. State v. Fry, 131 Wis. 2d 153, 182, 388 N.W.2d 565 (1986) (holding reasonable jury could find handgun in glove compartment was within reach of driver), overruled on other grounds by State v. Dearborn, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97; Mularkey v. State, 201 Wis. 429, 432, 230 N.W. 76 (1930) (concluding a handgun on a shelf behind the driver's seat is within reach of the driver). The other two were constitutional challenges to the Concealed Carry Statute, in which the question of whether the firearm was within reach was not at issue. State v. Fisher, 2006 WI 44, ¶¶1-2, 290 Wis. 2d 121, 714 N.W.2d 495; State v. Cole, 2003 WI 112, ¶49, 264 Wis. 2d 520, 665 N.W.2d 328. Significantly, no decision Grandberry cites——nor any decision we could find——has reviewed a factual finding that the trunk or cargo area of a motor vehicle was "within reach" for purposes of the Concealed Carry Statute. See id.

U.S. 454, 460 (1981) (quoting Chimel v. California, 395 U.S. 752, 763 (1960)) (alteration in original). Grandberry construes the Court's words in Belton to mean "within reach." We are not so convinced. Rather, federal courts have described the area subject to a warrantless search incident to arrest as the arrestee's "grab area." See, e.g., United States v. Gandia, 424 F.3d 255, 261 (2d Cir. 2005).[15] After equating the grab area of Fourth Amendment jurisprudence to "within reach" for purposes of the Concealed Carry Statute, Grandberry goes on to argue that the terms have the same meaning regardless of the context in which they are applied.[16] They do not.

¶25 Grandberry and the concurrence fail to recognize the important distinctions between these terms. Both Grandberry and the concurrence conflate judicial interpretations of the Fourth Amendment with a factfinder's application of laws to a given set of facts. The determination of whether police conduct comports with Fourth Amendment jurisprudence concerning searches incident to arrest is a question of law. State v. Harris, 206

---

[15] Accordingly, we employ the term "grab area" when referring to Fourth Amendment jurisprudence concerning searches incident to arrest and employ the phrase "within reach" for discussion related to the Concealed Carry Statute.

[16] The result of Grandberry's argument is that any area accessible from the passenger compartment (including the cargo area of minivans, station wagons, SUVs, and the like) is within reach, as a matter of law, because federal courts consider those areas to be within the person's "grab area," United States v. Stegall, 850 F.3d 981, 985 (8th Cir. 2017) (citing United States v. Mayo, 394 F.3d 1271, 1277 (9th Cir. 2005)).

Wis. 2d 243, 249-50, 557 N.W.2d 245 (1996). On the other hand, the question of whether a handgun is within reach is one of fact.[17] See McNair v. Coffey, 279 F.3d 463, 476 (7th Cir. 2002) (Coffey, J., concurring in the judgment and dissenting in part) ("It is a basic premise of our legal system that juries are the triers of fact only; it is for the judge, not the jury to interpret the law and to draw the line in the sand separating conduct that is protected and unprotected under the constitution.").

¶26 Accordingly, it would be improper for us to set forth an exhaustive list of nooks and crannies within the various and sundry configurations of motor vehicles wherein the armed, but unpermitted, motorist may place his dangerous weapon. Our inability is a matter of legal proscription and not lack of will. Put simply, we do not provide the certainty both Grandberry and the concurrence seek because our system of criminal justice assigns the task of defining statutory terms to this court (as we did when we defined "go armed with" to mean "within reach"), but assigns the task of determining whether a set of facts fits that definition (in this case, whether a

---

[17] E.g., Fry, 131 Wis. 2d at 182 (affirming jury verdict that handgun in glove compartment was within driver's reach); State v. Asfoor, 75 Wis. 2d 411, 435, 249 N.W.2d 529 (1977) (affirming jury verdict that handgun on floorboard of motor vehicle was within reach); Mularkey, 201 Wis. at 432 (affirming jury verdict that handgun on shelf behind front seat was within reach); State v. Keith, 175 Wis. 2d 75, 79, 498 N.W.2d 865 (Ct. App. 1993) (affirming jury verdict that handgun in defendant's purse was within reach).

dangerous weapon is "within reach") to the jury. State v. Leist, 141 Wis. 2d 34, 37-38 & n.2, 414 N.W.2d 45 (Ct. App. 1987) (citing United States v. Goetz, 746 F.2d 705, 708 (11th Cir. 1984) and State v. Christensen, 100 Wis. 2d 507, 510, 302 N.W.2d 448 (1981)); cf. Curtis v. Montgomery, 552 F.3d 578, 581-82 (7th Cir. 2009) (quoting People v. Curtis, 820 N.E.2d 1116, 1124 (Ill. App. Ct. 2005)) ("whether a particular set of circumstances constitutes 'surveillance' as defined in the statute is a question of fact for the jury.").

¶27 Next, Grandberry and the concurrence fail to recognize that the two bodies of law developed independently. As discussed above, we first used the term "within reach" to define "go armed with" in 1930. Mularkey, 201 Wis. at 432; see also supra, ¶16. The concept of search incident to arrest originated in 1914. Chimel, 395 U.S. at 755 (citing Weeks v. United States, 232 U.S. 383 (1914)). However, no phrase that resembles "within reach" or "grab area" was used in the search incident to arrest context before 1969. Id. at 763 ("There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'——construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."); see also id. at 755-762 (recounting development of search incident to arrest jurisprudence).

¶28 This independent development of the two distinct legal concepts is significant because we have never conflated the concepts of grab area and within reach when construing the

17

Concealed Carry Statute. One example of this separateness is Fry. Most of our decision in that case centers on our consideration of Fourth Amendment jurisprudence concerning searches incident to arrest. See generally Fry, 131 Wis. 2d at 161-81. However, in a discreet part of the opinion, we separately considered whether the evidence adduced at trial was sufficient to uphold the defendant's conviction for carrying a concealed and dangerous weapon. The defendant argued that the handgun in his glove compartment could not, as a matter of law, be within reach because he testified at trial that his glove compartment would not open when the passenger seat was occupied. Id. at 182. We rejected his argument because the jury "was free to discount" his testimony in resolving the factual issue of whether his handgun was within reach. Id. (quoted source omitted).

¶29 In Fry, we properly treated the concepts of "grab area" and "within reach" as entirely separate concepts, as we have for decades and as we do here. Id. The two areas of law developed separately, and it is only by coincidence that they employ similar language. Confusion between the two contexts exists only because Grandberry threw it out like so much chum upon the waters and the concurrence took the bait hook, line, and sinker. To define "within reach" in the same way the United States Supreme Court defines "grab area" is to: (1) assign a definition to "within reach" that was not and could not have

been intended when the term was first used;[18] (2) confuse two entirely separate and distinct areas of the law; and (3) lead naturally to the illegal usurpation of the role of the jury. We decline Grandberry's invitation to do so, no matter how vociferously the concurrence urges us to accept it.

### 3. Grandberry's argument fails because there is no conflict between the statutes.

¶30 We start by observing that no part of a motor vehicle is, as a matter of law, within reach. Rather, defining what areas of a motor vehicle are within reach has been, is now, and (absent legislative amendment) will continue to be a question to be resolved on a case-by-case basis by finders of fact and by courts reviewing the sufficiency of the evidence in particular cases. See generally Fry, 131 Wis. 2d at 182. Citizens who seek to comply with both statutes have at least two reasonable

---

[18] This court had been using "within reach" for purposes of the Concealed Carry Statute for approximately 39 years before the United States Supreme Court introduced the phrase "within his immediate control" to Fourth Amendment jurisprudence. See Mularkey, 201 Wis. at 432; Chimel, 395 U.S. at 763.

19

means of doing so: (1) obtaining a concealed carry license;[19] or, (2) placing their firearms out of reach.

¶31 Grandberry and the amicus devote a considerable portion of their respective arguments within their briefs describing the parade of horribles they claim will result from our decision to affirm the court of appeals. They raise the specter of promiscuous prosecution of hunters and sport shooters who will be left struggling to comply with both statutes. The myriad of hypothetical circumstances that may arise in factual backgrounds in prosecutions for carrying a concealed and dangerous weapon render it impossible for this court to establish a bright-line rule setting forth which parts of a vehicle are and are not within reach. Nor is it, absent legislative directive, our place to do so. See Kittias Cty. v. E. Wash. Groth Mgmt. Hearings Bd., 256 P.3d 1193, ¶23 (Wash. 2011) (rejecting proposed bright-line rule where inquiry is "a question of fact based on the specific circumstances of each case"). Nonetheless, citizens and factfinders can find

---

[19] Grandberry argues that requiring citizens to obtain a concealed carry license puts an economic barrier on their right to bear arms. This argument is rendered moot by our holding that persons without a concealed carry license can comply with both statutes by placing their firearms out of reach. Further, Grandberry raises the economic barrier argument as a bare one-sentence assertion in a footnote and never develops it. We need not address this argument, and given its undeveloped state, it would be imprudent to do so. State v. Gracia, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 ("we do not usually address undeveloped arguments").

20

guidance[20] in our precedent and common sense, and should consider factors such as the location of the dangerous weapon in the motor vehicle relative to the location of its possessor, the motor vehicle's size, and the possessor's ability to reach the dangerous weapon while in the motor vehicle.

> C. Grandberry Failed to Satisfy His Burden to Prove the Concealed Carry Statute is Unconstitutionally Vague.

¶32 We next consider whether the Concealed Carry Statute is unconstitutionally vague[21] as applied to Grandberry. He admits that "[v]iewed separately, the [Concealed Carry Statute] and the [Safe Transport Statute] appear clear." However, he argues that "read together, they create unconstitutional vagueness." This argument is based on the same premise as his sufficiency-of-the-evidence argument——that the two statutes are

---

[20] We resist the invitation of Grandberry and the amicus to make broad pronouncements based on hypothetical facts. See State v. Steffes, 2013 WI 53, ¶27, 347 Wis. 2d 683, 832 N.W.2d 101:

> [T]his court does not issue advisory opinions on how a statute could be interpreted to different factual scenarios in future cases. See Grotenrath v. Grotenrath, 215 Wis. 381, 384, 254 N.W. 631 (1934) ("[C]ourts will not ordinarily render advisory opinions where the questions propounded have not arisen and may never arise."). Rather, it is our job to adjudicate the dispute in front of us. It is thus not necessary for us to resolve the hypotheticals laid out by [the Defendant].

[21] The terms "unconstitutionally vague" and "void for vagueness" describe the same concept and are thus used interchangeably. See State v. McManus, 152 Wis. 2d 113, 135, 447 N.W.2d 654 (1989).

21

in conflict——and for the same reasons we hold that the Concealed Carry Statute provides sufficient notice of what conduct is prohibited.

¶33 "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Beckles v. United States, 137 S. Ct. 886, 892 (2017) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)). See also State v. Cissell, 127 Wis. 2d 205, 224, 378 N.W.2d 691 (1985) (quoting Kolender for the definition of void-for-vagueness); Wayne R. LaFave, 1 Substantive Criminal Law § 2.3 (2d ed.), Westlaw (database updated Oct. 2017) ("The void-for-vagueness doctrine . . . require[s] that a criminal statute be declared void when it is so vague that men of common intelligence must necessarily guess at its meaning and differ to its application").

¶34 Grandberry's constitutional challenge is as-applied. In an as-applied challenge, a court assesses the merits of the constitutional claim by considering the facts of the particular case, not hypothetical facts in other situations.[22] State v. Hamdan, 2003 WI 113, ¶43, 264 Wis. 2d 433, 665 N.W.2d 785. Thus, in this case, we consider whether a person of ordinary

---

[22] This is in contrast to a facial challenge, which requires the court to determine whether a statute may be constitutionally applied in any circumstance. Cole, 264 Wis. 2d 520, ¶30.

intelligence in Grandberry's situation (i.e., placing a loaded handgun in the glove compartment of a motor vehicle) would have fair notice that his conduct violates the Concealed Carry Statute. State v. Hahn, 221 Wis. 2d 670, 679, 586 N.W.2d 5 (Ct. App. 1998).

¶35 Grandberry's argument boils down to a complaint that the statutes overlap such that placing his loaded handgun in his glove compartment constitutes both transporting under the Safe Transport Statute and carrying under the Concealed Carry Statute, and thus his conduct can comply with one statute while simultaneously violating the other. Grandberry asks how a person reading the Safe Transport Statute can possibly know that complying with the terms of that statute may, in some circumstances, also violate the Concealed Carry Statute. Unlike the bulk of Grandberry's arguments, the answer to his question is straightforward and elegant in its simplicity: read the Concealed Carry Statute. Due process does not demand that every regulation on a certain subject be in the same statute; such a requirement would be absurd. Rather, where multiple statutes govern a defendant's conduct, due process requires that the terms of the statute under which the defendant was charged be sufficiently clear. Cissell, 127 Wis. 2d at 216-17 (citing United States v. Batchelder, 442 U.S. 114, 123 (1979)).

¶36 The Concealed Carry Statute provides sufficient notice to a person of ordinary intelligence that carrying a concealed and dangerous weapon is prohibited unless one of the statutory exceptions enumerated in Wis. Stat. § 941.23(2)(a)-(e) applies.

23

See Asfoor, 75 Wis. 2d at 435 (holding prior version of the Concealed Carry Statute was not unconstitutionally vague). The statute clearly defines what conduct is prohibited: "Any person . . . who carries a concealed and dangerous weapon is guilty of a Class A misdemeanor." § 941.23(2). The language creating the exceptions, "other than one of the following," is equally clear that the only way a person can lawfully carry a concealed and dangerous weapon is to fall within one of the enumerated exceptions. Id. Grandberry could not reasonably believe that placing a firearm in the glovebox of his motor vehicle is permitted under the terms of the Concealed Carry Statute[23]——something Grandberry obliquely acknowledged at the time of his arrest when he told the arresting officers (untruthfully) that he possessed a concealed carry license. Thus, Grandberry's due process challenge fails.

## IV. CONCLUSION

¶37 We hold that the Concealed Carry Statute and Safe Transport Statute are not in conflict because Grandberry could have complied with both by either obtaining a concealed carry

---

[23] Because this is an as-applied challenge, see supra ¶32, our conclusion that the Concealed Carry Statute is constitutionally applied to Grandberry does not mean that the Concealed Carry Statute is constitutionally applied in all circumstances. If, for instance, this opinion opens the wide floodgates to the variety and volume of prosecutions posited by Grandberry and the amicus, it will be up to the relevant courts to determine whether the Concealed Carry Statute may be constitutionally applied in each of those particular circumstances. See supra ¶29 n.20.

24

license pursuant to Wis. Stat. § 175.60 or by placing his loaded handgun out of reach. Further, we hold that the Concealed Carry Statute is not unconstitutionally vague because a person of ordinary intelligence has sufficient notice that carrying a concealed and dangerous weapon is unlawful unless one of the enumerated exceptions in the Concealed Carry Statute applies. For these reasons, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶38 DANIEL KELLY, J. *(concurring).* Mr. Grandberry tells us he did not "carr[y] a concealed and dangerous weapon" when he placed a handgun in his vehicle's glove compartment. See Wis. Stat. § 941.23(2). This is so, he says, because of a statute that exempts handguns from the type of firearms one may not place in a vehicle. Today, the court concludes Mr. Grandberry was wrong——he did carry a concealed and dangerous weapon, and no statute excused his actions. Therefore, his conviction was and is sound. And I agree with that.

¶39 But in reaching that conclusion, we created unnecessary ambiguity about what it means to "carry" a weapon. Whereas that concept bore only one meaning before today, now it bears two——one for measuring the propriety of vehicle searches under the constitution, and another for espying a violation of Wis. Stat. § 941.23(2) (the "Concealed Carry Statute"). This is both unnecessary and unwise.

¶40 The Concealed Carry Statute's proscription is clear, and the process of determining whether Mr. Grandberry violated it covers well-travelled ground. The statute says "[a]ny person, other than one of the following, who carries a concealed and dangerous weapon is guilty of a Class A misdemeanor." Wis. Stat. § 941.23(2). All agree that Mr. Grandberry did not fit within any of the exceptions, so we next inquire into what it means to "carry" a weapon. The Concealed Carry Statute provides the answer: "'Carry' has the meaning given in s. 175.60(1)(ag)." § 941.23(1)(ag). Following this cue, we find

1

in the referenced section that "'[c]arry' means to go armed with." Wis. Stat. § 175.60(1)(ag).

¶41 We have a long history with the phrase "to go armed with" as it relates to the Concealed Carry Statute. Nearly a century ago we decided, as a matter of law, that a person is armed when he has a firearm "within reach." Mularkey v. State, 201 Wis. 429, 432, 230 N.W. 76 (1930) ("[T]he driver of an automobile goes armed, within the meaning of section 340.69, Stats.,[1] when he has a dangerous weapon within reach on a shelf in back of his seat." (citations omitted)). We said essentially the same thing in State v. Asfoor, 75 Wis. 2d 411, 433-34, 249 N.W.2d 529 (1977), stating that "'going armed' meant that the weapon was on the defendant's person or that the weapon must have been within the defendant's reach." We confirmed this understanding of the phrase in State v. Fry, another case involving a handgun in a vehicle's glove compartment. 131 Wis. 2d 153, 182, 388 N.W.2d 565 (1986) ("The elements of the crime of carrying a concealed weapon are: (1) the defendant had a dangerous weapon on his person or within his reach . . . ." (citation omitted)), overruled on other grounds by State v. Dearborn, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97.

¶42 We now arrive at the end of the definitional chain in which "carry" means "go armed with," and "go armed with" means

---

[1] This statute was the precursor to the Concealed Carry Statute, and provided that "[a]ny person who shall go armed with any concealed and dangerous weapon shall be punished." Wis. Stat. § 340.69 (1929-30).

2

to have a weapon "within reach." A weapon is "within reach" if it is in a vehicle's passenger compartment. We know this on no less an authority than the United States Supreme Court. In describing the permissible scope of a warrantless search incident to arrest, the Court said: "Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" New York v. Belton, 453 U.S. 454, 460 (1981) (quoting Chimel v. California, 395 U.S. 752, 763 (1969)), abrogated on other grounds by Arizona v. Gant, 556 U.S. 332, 343 (2009). Some courts include "the hatchback or rear hatch area of a vehicle" within the meaning of "passenger compartment," so long as "an occupant could have reached [that] area while inside the vehicle." United States v. Stegall, 850 F.3d 981, 985 (8th Cir. 2017) (quoted source omitted). The rear cargo area of an SUV may also fall in that category. See United States v. Olguin-Rivera, 168 F.3d 1203, 1205 (10th Cir. 1999); see also United States v. Henning, 906 F.2d 1392, 1396 (10th Cir. 1990) ("Where, . . . the vehicle contains no trunk, the entire inside of the vehicle constitutes the passenger compartment and may be lawfully searched.").

¶43 This last definitional step is where we created ambiguity. We said that what is "within reach" for Fourth Amendment purposes is something different from what is "within reach" for purposes of the Concealed Carry Statute. The court

3

offers two reasons for its belief that these are "entirely separate concepts." See majority op., ¶29. First, it says they are substantively different because the court decides one, while the jury decides the other. The second is just a matter of rhetoric. Literally. The court chose synonymous phrases to describe the same concept and then asserted the synonyms created a substantive difference. I'll address each of these reasons in turn.

¶44 "Within reach," the court said, is a question of law in the Fourth Amendment context, while in the context of the Concealed Carry Statute it is a question of fact. Id., ¶25. Therefore, the court concluded they mean different things because the court decides the former and juries decide the latter. See id. Get it? I don't. And I don't think the court does either. Whether it is a question of law or a question of fact, both questions address precisely the same consideration: Can a person reach the firearm? The length of a person's arm doesn't change because a jury measures it instead of a judge. The only real significance presented by the different contexts is that one deals with a potentiality and the other with the resolution of the potentiality. Here is what I mean.

¶45 The lawful scope of a warrantless search incident to an arrest is defined by a potentiality, to wit, the space into which a person could conceivably reach to retrieve a weapon. The purpose of such searches is "'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or

4

destruction of evidence." Belton, 453 U.S. at 457 (quoting Chimel, 395 U.S. at 763). It is the danger created by an arrestee's potential access to a weapon that justifies the search. The Supreme Court emphasized this justification in Arizona v. Gant, in which it rejected a reading of Belton that allowed vehicle searches even when there was no reasonable chance the arrestee could access the passenger compartment: "Accordingly, we reject this reading of Belton and hold that the Chimel rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Arizona v. Gant, 556 U.S. 332, 343 (2009); accord State v. Dearborn, 2010 WI 84, ¶29, 327 Wis. 2d 252, 786 N.W.2d 97.

¶46 The Supreme Court's concern is entirely functional, and is focused on the physical reality that a quick movement within the passenger compartment could put a weapon in the suspect's hand. The Court has decided, as a matter of law, that the entirety of a vehicle's passenger compartment can be reached by such a movement. Presumably, it had a good basis for making that determination. If it did not, we would have to conclude that the Court's understanding of the Fourth Amendment in this context has its roots in a factual fallacy. Nothing suggests we ought to entertain that possibility, so I must conclude that the Court truly meant that a firearm in a vehicle's passenger compartment is within an occupant's reach.

5

¶47 Now for the court's rhetorical distinction between "within reach" and "within reach." The court says the federal judiciary "describe[s] the area subject to a warrantless search incident to arrest as the arrestee's 'grab area,'" majority op., ¶24 (quoting United States v. Gandia, 424 F.3d 255, 261 (2d Cir. 2005)), whereas our court uses "within reach" to describe the area subject to the Concealed Carry Statute. And then the court says "Grandberry and the concurrence fail to recognize the important distinctions between these terms." Id., ¶25. Well, that much is certainly true. But I take comfort in the fact that the Belton court——upon which the court relies for its rhetorical distinction——shares the same purported failure. Belton said the "the passenger compartment of an automobile" is subject to search because it is "within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" Belton, 453 U.S. at 460 (quoted source omitted). This is the actual sentence in which the court says it discovered a substantive difference between "grab area" and "within reach." See majority op., ¶24.

¶48 The problem with the court's discovery is twofold. First, there is not even a theoretical difference between "grab area" and an area that is "within reach." To conclude otherwise would be to say that one may grab something beyond one's reach, or that one may reach something one cannot grab. The second problem is grammatical. The court reads Belton as using "grab" to define an area. That's not what Belton was doing. It was describing what a suspect might do in an already defined area——

6

to wit, "grab a weapon or evidentiary ite[m]." Belton, 453 U.S. at 460 (quoted source omitted). How did the Belton court define where that might be done? It said a weapon might be grabbed from "within the area into which an arrestee might reach." Id. Or, with the judicious use of one's editing pencil, this definition can be shortened——without losing a jot or tittle of meaning——to "within . . . reach." So the court's discovery of a substantive difference between "within reach" and "within reach" is both illogical and ungrammatical. I am confident the Belton court would find no "important distinctions between these terms." See majority op., ¶25.

¶49 The court also faults me (and Mr. Grandberry) for not substantively distinguishing "within reach" (Fourth Amendment) from "within reach" (Concealed Carry Statute) based on the separate lines of cases in which the concept has been used. See id., ¶27. I acknowledge that I find this to be a distinction without a difference, but I don't think it's a fault. The Concealed Carry Statute concerns itself with the same physical reality addressed by Belton and Gant. In the Fourth Amendment context, the concern is whether there could be a weapon within reach. In the Concealed Carry Statute context, the concern is whether there actually was a weapon within reach.

¶50 This just means that the jury resolves as a factual matter the potentiality described by our Fourth Amendment jurisprudence. The Fourth Amendment defines the outer parameters of what could be lawfully within a defendant's reach; the jury decides whether a specific defendant could actually

7

reach that location under the circumstances of a specific case. If he could, then the weapon was "within reach" within the meaning of the Concealed Carry Statute. However, if circumstances arise that make it impossible for a defendant to obtain a weapon from the area described by Belton and Gant, the jury may acquit. The defendant attempted this very gambit in State v. Fry. He argued that the glove compartment in which he placed his gun would not open when the passenger seat was occupied, so the gun was not within reach. See Fry, 131 Wis. 2d at 176. The jury convicted him anyway, and we found no error. Id. at 156. Nor did we address the concealed-carry question as anything other than a particularized inquiry into the relationship between the weapon and the area described by Belton and Gant.

¶51 Mr. Grandberry's concerns have a good foundation, and we shouldn't have dismissed them as abruptly as we did. The court said that "[a]ccording to Grandberry, a person who transports a loaded handgun in a motor vehicle that lacks a trunk separate from the passenger area (e.g., a minivan, SUV, hatchback, or station wagon) complies with the Safe Transport Statute yet is always in violation of the Concealed Carry Statute." Majority op., ¶22. We then concluded that this would be a compelling argument but for the lack of any "statute, case law, or regulation" to support it. Id., ¶23. But in actuality we are the ones who lack a statute, opinion, or regulation to answer Mr. Grandberry's concern. No law defines "within reach" more narrowly in the concealed-carry context than in the Fourth

8

Amendment context. Consequently, if Mr. Grandberry encases a handgun and puts it in the furthest corner from the driver's seat in an SUV, he is at risk of prosecution for violating the Concealed Carry Statute.

¶52 Ultimately, the court doesn't finish the job it set out for itself. It proposed that the concept of "within reach" could describe one area for purposes of the Fourth Amendment, and a different area for purposes of the Concealed Carry Statute. But the court went no further than opining on why it believes the concept should describe different areas. That is to say, the opinion doesn't describe what the difference actually is. In fact, we affirmatively refused to say what it might be. Instead, we chillingly advised the people of Wisconsin to risk criminal liability on multi-factor tests and common sense: "[C]itizens and factfinders can find guidance in our precedent and common sense, and should consider factors such as the location of the dangerous weapon in the motor vehicle relative to the location of its possessor, the motor vehicle's size, and the possessor's ability to reach the dangerous weapon while in the motor vehicle." Id., ¶31 (footnote omitted). Anent the last clause of this formulation: How does "ability to reach the dangerous weapon while in the motor vehicle" differ from "within the area into which an arrestee might reach"? Common sense will utterly exhaust itself trying to find any room between the two, and we aren't saying what the difference might be. And yet, a person placing a firearm in a vehicle hazards

9

criminal prosecution if he can't figure out a distinction that we refuse to describe.

¶53 The Concealed Carry Statute is not unconstitutionally vague, but only because its proscription reaches the entirety of the passenger compartment. This is a readily-ascertainable prohibition. But if criminality depends on a non-exclusive list of variables like the size of a vehicle, the placement of a weapon, and "common sense," then we have denied the people of Wisconsin the ability to identify with any certainty what the statute prohibits with respect to vehicles. So, ironically, in the process of explaining why the statute is not unconstitutionally vague, we have made it so. See Kolender v. Lawson, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (citations omitted)).

\*

¶54 I agree with the court's mandate because Mr. Grandberry could comply with both the Concealed Carry Statute and Wis. Stat. § 167.31(2)(b) (the "Safe Transport Statute"). As we have described elsewhere, the Safe Transport Statute (as relevant here) simply exempts handguns from a prohibition against placing loaded firearms in a vehicle. Wis. Carry, Inc. v. City of Madison, 2017 WI 19, ¶¶12, 47-51, 373 Wis. 2d 543, 892 N.W.2d 233 (referring to the "Safe Transport Statute" as the

10

"Vehicle Statute"). Nothing about its terms excuses the individual from complying with all other applicable laws. So, although Mr. Grandberry did not violate the Safe Transport Statute when he placed his handgun in the glove compartment, he most assuredly violated the Concealed Carry Statute.

¶55 And now, a postscript of sorts: Given Wisconsin's proud hunting heritage, it's worth noting the Concealed Carry Statute's shockingly broad proscriptions. In amending our statutes to offer the opportunity to carry concealed handguns, the legislature simultaneously made it unlawful to carry a concealed rifle or other long gun. This may have been inadvert, but we give effect only to what the legislature does, not what it tried to do.[2] The Concealed Carry Statute prohibits an individual from carrying a "dangerous weapon." Wis. Stat. § 941.23(2). A "[d]angerous weapon" is, inter alia, "any firearm, whether loaded or unloaded." Wis. Stat. § 939.22(10). There is no exception for rifles, shotguns, or other long guns. A person can, of course, obtain a permit to carry a concealed weapon, but they are available only for handguns, electric weapons, and billy clubs. Wis. Stat. § 941.23(2)(d) (2015-16); Wis. Stat. § 175.60(1)(j) (2015-16). So if you hunt, you may not put your rifle in a case. And if you put your rifle in the passenger compartment of a vehicle,

---

[2] "We assume that the legislature's intent is expressed in the statutory language. . . . It is the enacted law, not the unenacted intent, that is binding on the public." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

11

you must display it in such a way that it is readily observable. Mularkey, 201 Wis. at 432 ("If the weapon is hidden from ordinary observation it is concealed. Absolute invisibility to other persons is not indispensable to concealment. The test is, was it carried so as not to be discernible by ordinary observation." (citation omitted)). The State is aware of this overbreadth, which is why it instructs game wardens to ignore the Concealed Carry Statute as it relates to hunters and their long guns. In the course of arguing this case, the State acknowledged that "as a practical matter, the DNR does not treat rifles in a case as 'concealed.'"

¶56 Finally, a post postscript. The Concealed Carry Statute also puts at risk all those who do not have concealed carry permits who nonetheless bring their handguns to shooting ranges. To comply with the statute, one would have to keep the handgun uncased at all times, and if placed in the passenger compartment of a vehicle, it would have to be situated so that it is readily observable.

¶57 Neither of these postscripts, however, affect Mr. Grandberry, so his conviction remains sound. Therefore, I concur and join the court's mandate.

¶58 REBECCA GRASSL BRADLEY, J. *(dissenting).* The majority's interpretation of the carrying concealed weapons statute, Wis. Stat. § 941.23, ("Concealed Carry Statute"), the license to carry a concealed weapon statute, Wis. Stat. § 175.60, (the "Concealed Carry Licensing Statute"), and the safe use and transportation of firearms and bows statute, Wis. Stat. § 167.31, ("Safe Transport Statute"), criminalizes hunters transporting long guns to hunting grounds, domestic violence victims transporting handguns to shooting ranges, and archers transporting crossbows to archeries. I instead construe these statutes to enable citizens who lawfully own firearms, crossbows, and bows to safely transport their weapons without subjecting themselves to criminal liability. The majority concludes the statutes clearly instruct how to comply with the law. I disagree. The interplay of these statutes does not provide clear notice or effective direction on how to comply with the law, and the lack of clarity allows for selective enforcement of Wis. Stat. § 941.23 (2013-14).[1] Consequently, the application of the Concealed Carry Statute and the Safe Transport Statute here is unconstitutional under the void for vagueness doctrine. Grandberry's conviction should be reversed.

¶59 In a 1930 case, <u>Mularkey v. State</u>, 201 Wis. 429, 432, 230 N.W. 76 (1930), this court adopted a definition of "go

---

[1] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

armed" to mean "on the defendant's person" or "within the defendant's reach." See State v. Asfoor, 75 Wis. 2d 411, 433-34, 249 N.W.2d 529 (1977) (reciting Mularkey's holding). Mularkey pulled this definition from Texas cases interpreting Texas' "unlawfully carrying arms" statute, 1911 Tex. Crim. Stat. 475, which proscribed carrying a weapon "on or about his person, saddle or in his saddle bags." See Wagner v. State, 188 S.W. 1001, 1002 (1916).[2] The Mularkey court's reliance on Texas case law to import "within reach" into Wisconsin's definition of "go armed" should be overruled for three reasons. First, Wisconsin's concealed carry statute never had language similar to the Texas statute. Compare Wis. Stat. § 340.69 (1930) ("Any person who shall go armed with any concealed and dangerous weapon shall be punished . . .") with Tex. Penal Code Art. 475 (1911) ("[I]f any person in this state shall carry on or about his person, saddle or in his saddle bags, any [weapon] he shall

---

[2] Mularkey v. State, 201 Wis. 429, 432, 230 N.W. 76 (1930) cited additional cases from Texas purportedly using the "within reach" terminology: Leonard v. State, 119 S.W. 98 (1909); Hill v. State, 100 S.W. 384 (1907); Mayfield v. State, 170 S.W. 308 (1914); DeFriend v. State, 153 S.W. 881 (1913); and Garrett v. State, 25 S.W. 285 (1894). None of these cases use the term "within reach." Defriend comes close to "within reach," but does not use that wording. It says:

"[O]n or about his person," as used in our statutes in connection with the carrying a pistol, is meant that the pistol that is alleged to have been carried must have been within easy access of the person carrying it; that the pistol could have been secured with practically no effort on the part of the person charged.

Id., 153 S.W. at 882.

2

be punished . . ."). Second, the Texas cases did not interpret "go armed" or specifically the word "carry"; instead, the Texas courts focused on the "about his person" language in Texas' law. Third, the United States Supreme Court's decision in District of Columbia v. Heller, 554 U.S. 570, 584 (2008) (quoting Muscarello v. United States, 524 U.S. 125, 143 (1998)), identifies the "natural meaning" of "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket." Accordingly, this court should abandon Mularkey's "within reach" expansion of what it means to "go armed." Doing so would honor the textual distinction between going "armed with" a concealed weapon and transporting a weapon in a vehicle, while confining the Fourth Amendment standard as to what is within a person's reach or immediately accessible to vehicle searches incident to arrest. See State v. Fry, 131 Wis. 2d 153, 181, 388 N.W.2d 565 (1986) (holding that when police search a vehicle incident to an arrest, "the area in the defendant's reach or presence" within the vehicle is authorized under the Fourth Amendment).

## I. VOID FOR VAGUENESS

¶60 Grandberry argues the interplay of Wis. Stat. § 941.23 and Wis. Stat. § 167.31 renders the Concealed Carry Statute void for vagueness as applied to a person who transports a firearm in a vehicle in a manner consistent with the Safe Transport Statute. Specifically, he contends the ordinary person would not have fair notice that if he complies with the Safe Transport Statute, he nevertheless might be guilty of violating the Concealed Carry Statute. He also points out common scenarios in

3

which it would be impossible to comply with the Concealed Carry Statute when transporting a firearm.

A.  Standard of Review & Applicable Principles of Law

¶61 Whether a statute is constitutional presents an issue of law reviewed de novo.  State v. Pittman, 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993).  Although statutes are generally presumed constitutional, when the challenge is not to the statute itself, but to how it is applied, no presumption exists.  Soc'y Ins. v. LIRC, 2010 WI 68, ¶27, 326 Wis. 2d 444, 786 N.W.2d 385 ("While we presume a statute is constitutional, we do not presume that the State applies statutes in a constitutional manner.").  "As such, neither the challenger nor the enforcer of the statute face a presumption in an as-applied challenge."  Id.

¶62 The void for vagueness doctrine protects individuals from unreasonable prosecution.  The Fourteenth Amendment to the United States Constitution declares that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  This constitutional guarantee is protected when courts declare a statute invalid that would otherwise violate individual procedural due process.  Kolender v. Lawson, 461 U.S. 352, 357 (1983).  Courts may invalidate unconstitutional statutes by applying the void for vagueness doctrine.  Id.  "[T]he void-for-vagueness doctrine requires a penal statute to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  Id.

4

¶63 This court set forth a two-part test in applying the void-for-vagueness doctrine: (1) is the statute "sufficiently definite to give persons of ordinary intelligence who seek to avoid its penalties fair notice of the conduct required or prohibited"? and (2) does the statute "provide standards for those who enforce the laws and adjudicate guilt" so the statute can be applied consistently? State v. McManus, 152 Wis. 2d 113, 135, 447 N.W.2d 654 (1989). "If the statute is so obscure that people of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional." City of Oak Creek v. King, 148 Wis. 2d 532, 546, 436 N.W.2d 285 (1989). Of particular relevance here, if a statute lacks adequate notice of what is prohibited, causing "basic policy matters [being left] to policemen, judges, and juries for resolution on an ad hoc and subjective basis," it is unconstitutional. Dog Fed'n of Wis., Inc. v. City of So. Milwaukee, 178 Wis. 2d 353, 359-60, 504 N.W.2d 375 (1993) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).

¶64 In assessing the clarity of a statute, normally only "a reasonable degree of clarity" is required for it to be constitutional; however, when the statute infringes on a constitutionally protected right, the law requires more exacting precision, and "a more stringent vagueness test should apply." Id. (first quoting Roberts v. United States Jaycees, 468 U.S. 609, 629 (1984); then citing Grayned, 408 U.S. at 110; Vill. of

<u>Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 499 (1982)).[3]

### B. Application

¶65 The Concealed Carry Statute makes it a crime to carry "a concealed and dangerous weapon" unless an exception applies. Wis. Stat. § 941.23. The exception at issue here covers a "licensee" who obtained a license under Wis. Stat. § 175.60. Wis. Stat. § 941.23(2)(d). Section 175.60 allows a person who owns a handgun, electric weapon, or billy club to get a license, which authorizes carrying the weapon concealed. However, the Safe Transport Statute allows any person to "place, possess, or transport a firearm, bow, or crossbow in or on a vehicle" as long as the "firearm is unloaded or is a handgun" and as long as a bow does "not have an arrow nocked" and a crossbow is not "cocked or is unloaded and enclosed." Wis. Stat. § 167.31(2)(b). The Safe Transport Statute does not delineate where in a vehicle the weapon must be placed and it does not contain any licensing requirements.

_____

[3] Grandberry's failure to make an argument grounded in the Second Amendment does not mean we should ignore the fundamental constitutional right to bear arms in analyzing his void for vagueness challenge. See <u>State v. Cole</u>, 2003 WI 112, ¶20, 264 Wis. 2d 520, 665 N.W.2d 328 ("We find that the state constitutional right to bear arms is fundamental."). Article I, Section 25 of the Wisconsin Constitution provides: "The people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose." The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. I note that Grandberry did raise this fundamental right in the circuit court.

¶66 The question is whether these statutes give fair notice that a person who wants to transport a weapon in his vehicle must either have a concealed carry license or put the weapon out of reach. And, does the State's admission that law enforcement looks the other way when a hunter has a long gun concealed in his vehicle demonstrate that Wis. Stat. § 941.23 violates constitutional due process guarantees?

### 1. Fair Notice

¶67 This court reviews whether fair notice exists from the perspective of a person of ordinary intelligence. McManus, 152 Wis. 2d at 135. Would a person of ordinary intelligence know from reading the statutes that in order to transport a firearm in his vehicle he must get a license or put it out of reach? Not likely. Instead, Wis. Stat. § 941.23 when read together with the Safe Transport Statute is more likely to "trap the innocent by not providing fair warning" of what is permissible and what is prohibited under law. Grayned, 408 U.S. at 108-09.

¶68 Wisconsin Stat. § 941.23 broadly proscribes carrying a concealed weapon unless certain exceptions apply. This statute informs any person who is not a current or former law enforcement officer that in order to lawfully carry a concealed handgun, electric weapon, or billy club outside of that person's own home, land, or business[4] a license is required under Wis. Stat. § 175.60. A license is available only for those three weapons——but not a rifle, shotgun, crossbow or bow. Wis. Stat.

---

[4] Wisconsin Stat. § 941.23(2)(e) allows a person to carry concealed weapons in these places.

7

§ 175.60(1)(j). Section 941.23(1)(ag) adopts the definition of "carry" given in § 175.60(1)(ag), which tells a person that "'[c]arry' means go armed with." Neither statute defines "carry" to mean "have within reach." Section 175.60 also prohibits licenses for those "less than 21 years of age." Wis. Stat. § 175.60(3)(a).

¶69 These statutes certainly give fair notice that anyone over the age of 21 who wants to carry a concealed handgun, electric weapon, or billy club outside his property or business must get a license. But the language of these statutes does not mention vehicles or transportation at all; further, these statutes do not allow the owner of a long gun, bow, or crossbow, or any gun owner under the age of 21 to get a license. Significantly, these statutes define "carry" only as "go armed with." There is nothing in the statutory text suggesting that "carry" means having a weapon "within reach" in a vehicle. The "within reach" part of the "carry" definition comes from our case law, not from the statutes.

¶70 Although, generally speaking, every person is presumed to know the law, see Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship, 2002 WI 108, ¶13 n.4, 255 Wis. 2d 447, 649 N.W.2d 626, this case turns on whether the statutory language gives fair notice to a person of ordinary intelligence, not whether this court's decisions interpreting the statutory language do.

¶71 In addressing "fair notice" this court observed:

> Actual notice of the statute may be irrelevant in applying the concept of fair notice. Courts require the law be clear so that those who consult the law are not confused or misled. Justice Holmes observed that

8

> "[a]lthough it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. [To make the warning fair, so far as possible the line should be clear.]"

State v. Neumann, 2013 WI 58, ¶50 n.29, 348 Wis. 2d 455, 832 N.W.2d 560 (quoting McBoyle v. United States, 283 U.S. 25, 27 (1931)). The line is far from clear in the matter before this court, except perhaps to a lawyer so well-versed in the laws governing weapons as to be aware of this court's reach into Fourth Amendment jurisprudence, which transfigured the rather simple concept of "carrying" into something altogether detached from the person.

¶72 A person of ordinary intelligence who is trying to learn the legal ways to transport a firearm (or bow or crossbow) would logically turn to the Safe Transport Statute because it addresses transportation of these weapons in vehicles. The text of the Safe Transport Statute allows a person to "place, possess, or transport a firearm, bow, or crossbow in or on a vehicle" if the firearm is unloaded or is a handgun, if a bow does not have an arrow nocked, and if a crossbow is either not cocked or is unloaded and encased. The Safe Transport Statute says nothing about where any weapon must be placed in the vehicle, and specifically requires concealment of one type of weapon as one method of compliance. The Safe Transport Statute plainly gives fair notice that: (1) a loaded handgun can be placed, possessed or transported in a vehicle; (2) any other unloaded firearm can be placed, possessed or transported in a

9

vehicle; (3) a bow without an arrow nocked can be placed, possessed or transported in a vehicle; and (4) a crossbow can be placed, possessed or transported in a vehicle if it is either not cocked or is unloaded and in a carrying case. The Safe Transport Statute's text does not say that only a concealed carry licensee can place, possess or transport a handgun in a vehicle. Further, it gives no instruction on specifically where in the vehicle these weapons must be placed.

¶73 The majority concludes that these statutes are not void for vagueness because Grandberry could have complied with both by either getting a concealed carry license or putting his handgun out of reach in his vehicle.[5] How would a person of ordinary intelligence know this? The text of both statutes does not alert a gun owner of any connection between the two, much less a dependency of the Safe Transport Statute on the Concealed Carry Licensing Statute. Other states' statutes combine their carrying a weapon statute with transportation of a weapon in a vehicle statute so a person clearly knows what is lawful and what will subject a person to prosecution. See, e.g., Tex. Penal Code Ann. § 46.02 (West 2017); Ohio Rev. Code Ann. § 2923.12 (West 2017-18). Wisconsin's Concealed Carry Licensing

---

[5] According to the record, Grandberry had lawfully purchased the firearm involved, passed a background check, attended the concealed carry licensing class, and had sent in his paperwork to obtain the license at the time of the traffic stop in this case. Further, according to Grandberry, he did not lie to the police when asked whether he had a concealed carry license; instead, he told the officer he had sent in the paperwork for his license. His application for a license was denied because of this case.

10

Statute limits licenses to handguns, billy clubs, and electric weapons and requires all licensees to be at least 21 years old. If the majority's conclusion is correct, then a large group of gun (and all bow/crossbow) owners, for whom concealed carry licenses are unavailable, are treated differently than handgun owners 21 years old or older. Under the majority's statutory construction, it is impossible for long gun owners who drive small vehicles without trunks to lawfully transport their guns. Additionally, most gun ranges require weapons to be encased when they are brought into these facilities.[6] However, such concealment is prohibited by the Concealed Carry Statute, making it impossible to lawfully take a long gun from a car into a range.

¶74 The majority's conclusion absolves the legislature from enacting laws that give fair notice to Wisconsin citizens who exercise their Second Amendment right to bear arms on how to lawfully transport them. Instead, the majority declares it reasonable to expect the ordinary person reading the statutes to

---

[6] See, e.g., Range Safety Rules, Wisconsin Firearms Training Center, https://www.wifirearms.com/rangemanagement/info.cfm?title=range-safety-rules (last visited Feb. 27, 2018) ("All firearms are to be unloaded, cased, with actions open when entering or leaving the facility."); Range Rules, The Range of Richfield, https://therangewi.com/range-rules/ (last visited Feb. 27, 2018) ("All firearms are to be unloaded, cased, with actions open when entering or leaving the facility."); Shooting Range Indus. LLC, First Time at Shooting Range? Proper Indoor & Outdoor Gun Range Etiquette & Rules for Beginners http://www.shootingrangeindustries.com/first-time-shooting-range-proper-indoor-outdoor-gun-range-etiquette-rules-beginners/ (last visited Feb. 27, 2018) ("It is proper to have your gun in a gun case of some type. You never want to walk in with a naked gun.")

do the work of a lawyer and study, analyze, and properly interpret case law (assuming he can find it) in order to reconcile two conflicting statutes. Even more absurdly, the majority expects, indeed requires a person of ordinary intelligence to know what is "within reach" despite the inability of the justices on this court to define it. See majority op., ¶31 (recognizing "it [is] impossible for this court to establish a bright-line rule setting forth which parts of a vehicle are and are not within reach").

¶75 Even if a person of ordinary intelligence was able to find and read every applicable Wisconsin case and to understand that a gun placed "within reach" in a vehicle violates Wis. Stat. § 941.23, that person would also have necessarily read footnote 2 in State v. Walls, 190 Wis. 2d 65, 69 n.2, 526 N.W.2d 765 (Ct. App. 1994), which provides:

> We are mindful "that there is a long tradition of widespread lawful gun ownership by private individuals in this country." Staples v. United States, 511 U.S. 600 (1994). Thus, our conclusion in this case in no way limits the lawful placement, possession, or transportation of, unloaded (or unstrung) and encased, firearms, bows, or crossbows in vehicles as permitted by § 167.31(2)(b) . . . .

¶76 After reading this footnote, a person of ordinary intelligence would turn to the current Safe Transport Statute, which allows transportation of a handgun in a vehicle. Walls, in essence, says transportation of a gun in a vehicle does not violate Wis. Stat. § 941.23 as long as a person follows the Safe Transport Statute.

12

¶77 The text of these statutes leads to uncertainty and lacks "sufficient definiteness [such] that ordinary people can understand what conduct is prohibited." Kolender, 461 U.S. at 357. The statutes here do not even give a reasonable degree of clarity, let alone meet the heightened standard required for statutes that infringe upon constitutionally protected rights. Grayned, 408 U.S. at 110; Vill. of Hoffman Estates, 455 U.S. at 499. These statutes do not give fair notice to the person of ordinary intelligence who needs to transport her firearm or bow or crossbow from her home to another destination of how to lawfully accomplish this routine activity; therefore, the first part of the void for vagueness test is satisfied.

## 2. Standards for Enforcement

¶78 The second part of the void for vagueness test requires this court to analyze whether the text of the statutes give clear guidance to those who enforce and adjudicate the laws. Our statutes must be capable of being enforced objectively and should not result in ad hoc, discriminatory, or subjective enforcement. Grayned, 408 U.S. at 108-09; Kolender, 461 U.S. at 357-58. Here, the State conceded that law enforcement looks the other way when hunters carry their long guns concealed in violation of Wis. Stat. § 941.23. This is necessary because hunters must transport their long guns to reach their hunting destinations, and Wisconsin does not issue concealed carry licenses for long guns. Finding a place in most vehicles where a group of hunters traveling together could place multiple long guns without violating § 941.23 is highly unlikely

13

if not altogether impossible. If law enforcement arrested hunters every time they violated § 941.23, our court system would be overwhelmed with thousands of such cases and repeat offenders every hunting season.[7]

¶79 The text of these statutes unavoidably encourages selective enforcement and prosecution, thereby satisfying the second part of the void for vagueness test because the statutes currently permit "a standardless sweep allow[ing] policemen, prosecutors and juries to pursue their personal predilections." Kolender, 461 U.S. at 358 (quoting Smith v. Goguen, 415 U.S. 566, 575 (1974)).

## II. "GO ARMED WITH" DEFINITION

¶80 I also write separately because our continued adherence to Mularkey's importation of "within reach" as Wisconsin's definition for "go armed" is textually and constitutionally unsound. Wisconsin Stat. § 941.23 says: "Any person, other than one of the following, who carries a concealed and dangerous weapon is guilty of a Class A misdemeanor." Section 941.23 does not define "carries," but rather cross references to a definition provided in Wisconsin Stat. § 175.60. See § 941.23(1)(ag) ("'Carry' has the meaning given in s. 175.60(1)(ag)"). Section 175.60 defines "[c]arry" to mean "go

---

[7] A variety of other problematic scenarios further support my conclusion. For example, how is a 19-year-old who owns a handgun for personal protection supposed to transport her handgun from her home to her grandmother's house for the holidays while driving her subcompact hatchback car? She simply cannot do so without violating Wis. Stat. § 941.23 and subjecting herself to criminal liability.

14

armed with." Wis. Stat. § 175.60(1)(ag). Section 175.60 is additionally linked to § 941.23 because the latter exempts concealed carry licensees from its prohibition of concealed carry. See Wis. Stat. § 941.23(2)(d).

¶81 As noted, our case law holds that to "go armed" means to have the weapon "on the defendant's person or that the weapon must have been within the defendant's reach and that the defendant was aware of the presence of the weapon." Asfoor, 75 Wis. 2d at 433-34 (citing Mularkey, 201 Wis. at 432).

¶82 This judicial expansion of the "go armed" definition to encompass having a firearm "within reach" has no basis in Wisconsin law and contradicts the definition of "bear arms" recognized by the United States Supreme Court in Heller. We should take this opportunity to discard the judicially-invented "within reach" part of this definition and align our definition of "go armed" with Heller's definition of "bear arms." The Court in Heller explained that "bear" means "carry," and adopted the "most familiar meaning" of "carries a firearm" as: to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584 (quoting Muscarello v. United States, 524 U.S. 125, 130, 143 (1998)) (interpreting the meaning of "carries a firearm" in a federal criminal statute)).

¶83 Wisconsin should adopt Heller's definition of "carry" to mean the weapon is "upon the person or in the clothing or in a pocket." Both the United States Constitution and the

15

Wisconsin Constitution protect the right of the people to "bear" arms. The United States Supreme Court recognizes that "bear" means "carry" and what it means to carry is the pivotal word in this case. Wisconsin statutes define "carry" to mean "go armed with." Constitutionally and textually, this can only mean upon the person or in the person's clothing.

¶84 When the Mularkey court injected "within reach" into our definition of "go armed" in 1930, it did so based on a Texas case interpreting Texas' unlawfully carrying arms statute, which contains language Wisconsin's statute never used. Specifically, the Texas statute provided:

> Unlawfully carrying arms.——If any person in this state shall carry on or about his person, saddle, or in his saddle bags, any pistol, dirk, dagger, slung shot, sword cane, spear, or knuckles made of any metal or any hard substance, bowie knife, or any other knife manufactured or sold for purpose of offense or defense, he shall be punished by fine or not less than one hundred dollars nor more than two hundred dollars, or by confinement in the county jail not less than thirty days nor more than twelve months, or by both such fine and imprisonment.

1911 Tex. Crim. Stat. 475 (second emphasis added). The crucial difference between the Texas statute and Wisconsin's is the presence of "about his person" in Texas' statute, language that never appeared in Wisconsin's concealed carry statute. See State v. Dundon, 226 Wis. 2d 654, 672, 594 N.W.2d 780 (1999) (summarizing the history of Wis. Stat. § 941.23). One Texas court equated "about his person" with having a pistol on a wagon seat nearby——in other words, within reach. Garrett v. State, 25 S.W. 285 (1894). In contrast, the Wisconsin legislature enacted the first concealed weapons law in 1872, and it used "person

16

shall go armed with" language. Dundon, 226 Wis. 2d at 671 (quoting § 1, ch. 7, Laws of 1872). Although the statute was amended in 1878, this "shall go armed" language remained essentially the same: "Any person who shall go armed with any concealed and dangerous weapon shall be punished . . . ." Dundon, 226 Wis. 2d at 672 (quoting Wis. Stat. § 4397 (1878)). The legislature did not change the "go armed with" language until it enacted 2011 Wis. Act 35, which included both the current version of § 941.23 and the licensing statute, Wis. Stat. § 175.60. And then the change was merely structural and not substantive; the legislature replaced the "go armed with" language with "carries" and said "'[c]arry' has the meaning given in s. 175.60(1)(ag)."[8] Section 175.60(1)(ag) defines "carry" to mean "go armed with." Wisconsin never enacted language like the Texas statute; therefore, Mularkey's reliance upon Texas cases was improper in 1930 and remains improper now. Nothing in the text of Wisconsin's concealed carry statutes, historically or currently, proscribes concealment of a weapon "within reach" in a vehicle. This criminalization was accomplished by the judiciary reading something into § 941.23 that is not there, resulting in a statutory construction without basis in the text and therefore unknowable to the average citizen responsible for complying with the law.

¶85 Some states apply these statutes only "where the weapon is worn on the person of the defendant." W.M. Moldoff,

---

[8] See Wis. Stat. § 941.23(1)(ag).

17

Annotation, Offense of carrying concealed weapon as affected by manner of carrying or place of concealment, 43 A.L.R.2d 492, § 4(d); see State v. Weston, 94 S.E. 871 (S.C. 1918) (holding that pistol placed in a satchel or suitcase does not constitute "carrying an unlawful weapon"); Watson v. Stone, 4 So. 2d 700 (Fla. 1941) (holding that pistol in the glove pocket attached to the inside of the dash of his vehicle did not violate statute). The Florida Supreme Court in Watson distinguished cases from those states that specifically use the "on or about the person" language in their statutes, concluding that because the Florida statute does not include the "on or about" language, the pistol placement in the glove pocket did not violate Florida's law prohibiting carrying or having a pistol in one's manual possession. 4 So. at 702. The Florida Supreme Court specifically distinguished Florida's statutory language of "carrying" or "having a pistol in his manual possession" from foreign statutes "making it unlawful for the weapon of the defendant to be on, under or behind the seat, cushion, door, side floor or pockets of an automobile." Id. This same reasoning should have been applied when Mularkey was decided——the Wisconsin statute does not use the "on or about" language and instead prohibits concealed "carrying"; therefore, this court misguidedly added the "within reach" language to the definition of "go armed."

¶86 While adhering to precedent is an important doctrine for lending stability to the law, not every decision deserves stare decisis effect. After all, the purpose of stare decisis

18

"is to make us say that what is false under proper analysis must nonetheless be held to be true, all in the interest of stability." Antonin Scalia, <u>A Matter of Interpretation:</u> <u>Federal Courts and the Law</u> 138-40 (1997). However, "[t]he principle of stare decisis does not compel us to adhere to erroneous precedents or refuse to correct our own mistakes." <u>State v. Outagamie Cty. Bd. of Adjustment</u>, 2001 WI 78, ¶31, 244 Wis. 2d 613, 628 N.W.2d 376. This is particularly true when following flawed precedent criminalizes behavior that a person of ordinary intelligence would reasonably consider statutorily permissible. "Reflexively cloaking every judicial opinion with the adornment of stare decisis threatens the rule of law, particularly when applied to interpretations wholly unsupported by the statute's text." <u>Manitowoc v. Lanning</u>, 2018 WI 6 (R. Grassl Bradley, J., concurring).

¶87 "Stare decisis is neither a straightjacket nor an immutable rule." <u>Johnson Controls, Inc. v. Employers Ins. of</u> <u>Wausau</u>, 2003 WI 108, ¶100, 264 Wis. 2d 60, 665 N.W.2d 257 (quoting <u>Carpenters Local Union No. 26 v. United States Fid. &</u> <u>Guar. Co.</u>, 215 F.3d 136, 141 (1st Cir. 2000)). There are circumstances in which a court may overturn "outdated or erroneous holdings." <u>Johnson Controls, Inc.</u> 264 Wis. 2d 60, ¶96 (quoted source omitted). Among other factors, in deciding "whether to depart from stare decisis" this court considers "whether the prior decision is unsound in principle" and "whether it is unworkable in practice . . . ." <u>Id.</u>, ¶99 (citations omitted). This case vividly exemplifies both

19

factors. The foundation of Mularkey's adoption of "within reach" rests not on the text of Wisconsin's statute but on Texas' markedly different statutory language. This court's interpretation of "go armed with" as encompassing having a firearm "within reach" clouds a plain reading of the statutes, thereby impairing the ability of any person of ordinary intelligence to comply with the law.

¶88 In this case, "[i]t is well to keep in mind just how thoroughly [the Mularkey court's opinion] rewrote the statute it purported to construe." Johnson v. Transp. Agency, 480 U.S. 616, 670 (1987) (Scalia, J., dissenting). Because Mularkey's interpretation of the statute's "go armed with" language reaches well beyond the statutory text, I decline to perpetuate this court's error on the altar of stare decisis, particularly when the error creates a trap for the well-intentioned but unwary citizen.

¶89 Correcting the error that originated in Mularkey and survived for nearly 90 years would quite appropriately eliminate "within reach" from concealed carry cases, confining the "within reach" concept to Fourth Amendment incident to arrest searches

where it belongs.[9] The majority opinion instead attempts to ascribe a different meaning of "within reach" in concealed carry cases than Fourth Amendment search incident to arrest cases give it,[10] but it could avoid this linguistic fallacy by applying the definition of "go armed" as set forth by the United States Supreme Court in Heller to mean "upon the person or in the clothing or in a pocket." Because this court continues to define "go armed" under Wis. Stat. § 941.23 to include "within

---

[9] The Fourth Amendment vehicle search incident to arrest cases broadly define what is in within reach (or accessible to the defendant without leaving the vehicle) and therefore searchable without a warrant. See Arizona v. Gant, 556 U.S. 332, 335 (2009) (clarifying Chimel v. California, 395 U.S. 752 (1969) and New York Belton, 453 U.S. 454 (1981), but agreeing that police who search incident to arrest may search any area "within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'"). Courts have held this includes the cargo area in a hatchback car, the trunk area if accessible from the back seat, and a covered cargo area in a sport utility vehicle. See United States v. Stegall, 850 F.3d 981, 985 (8th Cir. 2017); United States v. Allen, 469 F.3d 11, 15-16 (1st Cir. 2006); United States v. Arnold, 388 F.3d 237, 239-41 (7th Cir. 2004) (collecting cases) (protective search case); United States v. Olguin-Rivera, 168 F.3d 1203, 1206 n.1 (10th Cir. 1999) (collecting cases).

[10] The majority's attempt to separate "within reach" in the concealed carry context from the incident to arrest framework may create more problems than it purports to resolve. Going forward, the majority's decision prevents the State from using any "within reach" incident to arrest cases as the basis for argument in a concealed carry case. It also necessitates a trial in every concealed carry "within reach" case, regardless of where the weapon is located in the car. Consequently, even if a handgun is sitting on a defendant driver's seat, a jury would need to decide whether the handgun was "within reach" instead of allowing the circuit court to conclude as a matter of law that the carrying element of the test was satisfied.

21

reach," I cannot join it. I would align Wisconsin law with the constitutions of both this state and the United States and apply the original meaning of "go armed with" as defined in Heller. Because the majority renders many of Wisconsin's law-abiding gun owners criminals, but for the benevolence of law enforcement and the discretion of prosecutors, I respectfully dissent.